**Joyce GAFFNEY, Plaintiff-Appellant,**

**v.**

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant-Appellee.**

No. 86–1725.

United States Court of Appeals, Sixth Circuit.

Submitted on Briefs Feb. 12, 1987.

Decided June 16, 1987.

Before KEITH, Circuit Judge, and WEICK and CONTIE, Senior Circuit Judges.

PER CURIAM.

Appellant Gaffney appeals from the decision of the district court affirming the Secretary's denial of disability insurance benefits and supplemental security income benefits.

**I.**

Appellant filed applications for disability insurance benefits and supplemental securi-

---

ty income benefits on September 7, 1984. Appellant alleged a disability onset date of August 3, 1984. Her claim was denied and she requested an administrative hearing. The hearing was granted and held on May 21, 1985. The appellant appeared at the hearing without counsel. She was informed that she could be represented by counsel but she declined.

On June 7, 1985, the Administrative Law Judge (ALJ) held that appellant was not entitled to disability insurance benefits or supplemental security income benefits. Appellant requested a review of the ALJ's decision but the Appeals Council denied the request on December 13, 1985, adopting the ALJ's decision as the final decision of the Secretary of Health and Human Services. Appellant subsequently filed the instant action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Secretary's final decision. On July 2, 1982, the district court affirmed the Secretary's decision. Claimant filed this timely appeal.

Appellant was born on February 11, 1946, making her 38 years of age on the date of the hearing. Appellant is married and has completed school through the seventh grade. Her past relevant work is as a production worker in various capacities. She has been employed as a cannery worker where she lifted up to 10 pounds and was on her feet eight hours a day. Appellant also worked for two different companies as a machine operator. On one job she had to lift up to 25 pounds and on the other she had to lift up to 10 pounds. Appellant last worked in June of 1982.

Appellant alleges a disability onset date of August 3, 1984. This is the date she was in an automobile accident and suffered fractures of her right hip and right hand. She testified that because of the pain in her right leg she cannot walk more than two blocks, cannot sit more than one hour, and cannot stand more than one hour without a cane. She did testify that she is able to lift up to 10 pounds.

Appellant stated that she has pain in her right leg almost always but the severity of the pain fluctuates. However, she also stated that with the use of medication the pain is almost non-existent. Appellant's little finger on the right hand is disfigured and she retains little strength in the right hand. The appellant's normal day consists of cleaning her house, washing dishes, cooking, laundering, and watching television. Appellant does not perform any yard work and engages in no social activities such as watching sporting events or visiting friends.

Appellant's husband testified at the hearing that she was unable to put pressure on her right leg and that she cannot perform many simple tasks. He also stated that because of her right leg limitation, she cannot drive a car.

The medical evidence shows that appellant suffered multiple lacerations to her face and fractures of her right hand and right hip on August 3, 1984. She was hospitalized at Allegan General Hospital from August 3 to August 29, 1984. Dr. Warner, appellant's treating physician, first saw appellant on August 3, 1984, and has been treating her ever since. Appellant was put into skeletal traction posture for 10 days, at which time a CAT scan of the hip was obtained. A reduction of the right hip was performed on August 13, 1984. Appellant was again put into skeletal traction after the surgery and she was placed on a continuous passive motion machine to enhance motion. The skeletal traction was removed on August 20, 1984, and she began ambulating.

Appellant had surgery on her hand August 3, 1984, but did not start therapy for the hand until she was out of traction. At the date of discharge on August 29, 1984, appellant was ambulating on a non-weight bearing status, and no medications for pain were given. Appellant was next seen by Dr. Warner on September 12, 1984. There were no complaints of pain at this time except for some irritation around the area where the traction was placed. Appellant was seen on October 10, 1984, and began weight bearing. Appellant began full weight-bearing on November 21, 1984, and her complaints of pain were minimal.

Appellant alleged that she fell down in January of 1985. She claimed to have pain

and tenderness. Dr. Warner examined appellant on January 14, 1985, and found no vascular or neurological abnormalities in the right leg. The physician found some heterotopic bone formation of the right hip. Dr. Warner did note that appellant had severe discomfort with rotation of the hip and tenderness in the groin area. Dr. Warner stated appellant could require further hip surgery in one or two years and that she would never have full function of the hip. He also noted that appellant's right finger motion was significantly decreased and that the little finger was devascularized. X-rays of the right hand revealed wire beneath the skin with the fractures adequately healed.

As a result of this new injury, Dr. Warner put her on non-weight bearing status and scheduled x-rays of the hip. The x-rays were examined by Dr. Eugeis, who concluded that "septic necrosis [was not present and that overall] these x-rays were relatively unchanged from the x-rays taken in 1984." Drs. Warner and Songer reviewed the x-rays on March 1, 1985, and determined that "[t]here is believed to be a slight weight-bearing articular space narrowing and a suggestion of minimal flattening of the associated portion of the femoral head which could be related to early aseptic necrosis although no subcortical curvilinear lucency was evident to more strongly confirm that."

The ALJ determined that the appellant has severe impairments consisting of a right hip disorder and a right hand deformity. However, the ALJ opined that appellant did not have an impairment or combination of impairments which meets or equals the requirements of the Listing of Impairments. The ALJ also determined that appellant's allegations of severe intractable and debilitating right leg pain were not credible. The ALJ concluded that although appellant could not perform her past relevant work as a cannery worker or a machine operator she has the residual functional capacity to perform a full range of sedentary work. Therefore, considering appellant's residual functional capacity, age, education and work experience, the ALJ concluded that appellant was not disabled.

## II.

The only issue involved on appeal is whether there is substantial evidence to support the Secretary's decision to deny the claimant disability benefits. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." It is more than a scintilla but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). The scope of judicial review is limited to determining whether the findings of fact made by the Secretary are supported by substantial evidence, and deciding whether the Secretary employed the proper legal criteria in reaching those findings. *Gibson v. Secretary of Health, Education & Welfare*, 678 F.2d 653 (6th Cir.1982). Thus, the court may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility.

Appellant alleges that she has aseptic necrosis in her right hip. As a result of this she claims to have excrutiating pain and is therefore unable to work. Appellant also alleges that her hip impairment and her right hand impairment hinder her ability to work so that she is unable to perform a full range of sedentary work.

Appellant claims that x-rays of March 1, 1985, were described as early evidence of aseptic necrosis. The appellant does note that the ALJ was not provided with a report of the x-rays. However, the appellant states that the Appeals Council was provided with a report of the x-rays and the ALJ was provided with a medical report form stating that she had aseptic necrosis.

■ It appears that appellant is correct in stating that a person suffering from aseptic necrosis can have excrutiating pain. However, there is minimal evidence, if any, to show that appellant has aseptic necrosis. After reviewing the x-rays of March 1, 1985, Drs. Warner and Songer did not conclude as appellant argues, that she has aseptic necrosis but instead found the following: "[t]here is believed to be a slight

weight-bearing articular space narrowing currently and suggestion of minimal flattening of the associated portion of the femoral head which could be related to early aseptic necrosis although no subcortical curvilinear lucency is evident to more strongly confirm this."

It is our opinion that the Appeals Council was correct in noting that this evidence falls short of establishing that appellant has aseptic necrosis. The most that the statement could be interpreted as finding is that while it may be possible that appellant has aseptic necrosis, the objective medical evidence does not confirm its existence. Also, the medical form that the ALJ was provided with does have the words aseptic necrosis on it but the form is not signed or dated. This evidence surely adds very little to the already weak evidence.

Appellant also alleges that the ALJ wrongfully determined that her allegations of extreme pain were not credible. She argues that just because she can do a few household chores does not mean she is not suffering from disabling pain. She also alleges that the ALJ erred when he discredited appellant's allegations of pain because she sat through the hearing showing no signs of discomfort. Appellant claims this is nothing more than the universally discredited "sit and squirm" test. *See Weaver v. Secretary of Health and Human Services,* 722 F.2d 310 (6th Cir.1983).

The two-pronged test for reviewing claims of disabling pain is set forth in *Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir. 1986):

First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*See also,* S.Rep. No. 466, 99th Cong., 2d Sess. 24, *reprinted in* 130 Cong.Rec. S6221 (daily ed. May 22, 1984); *Landry v. Heck-*

*ler,* 782 F.2d 1551, 1553–54 (11th Cir.1986) (per curiam). In applying this rule it must be kept in mind that the determination of credibility related to subjective complaints of pain rest with the ALJ and that "the ALJ's opportunity to observe the demeanor of the claimant ... is invaluable and should not be discarded lightly." *Kirk v. Secretary of Health and Human Services,* 667 F.2d 524, 538 (6th Cir.1981) *quoting Beavers v. Secretary of Health and Human Services,* 577 F.2d 383, 387 (6th Cir.1978).

It is our opinion that the ALJ did not commit error. The ALJ did not use a sit and squirm test but instead examined the entire record. The ALJ found that appellant had severe impairments consisting of a right hip disorder and a right hand deformity. This will satisfy the first prong of the *Duncan* test. However, the second prong of the *Duncan* test is not satisfied. As previously stated, there is insufficient evidence to show that appellant had aseptic necrosis. Furthermore, there is not objective medical evidence confirming the severity of the alleged pain nor is there an objectively established medical condition of such severity that it could reasonably be expected to produce the alleged disabling pain. The medical record is therefore lacking in evidence concerning disabling pain.

Appellant is also in error when alleging that there is not substantial evidence to support the ALJ's decision that appellant's hip impairment and hand impairment do not significantly limit her ability to perform a full range of sedentary work. The ALJ found that while appellant had difficulty opening a pickle jar with her right hand, in October of 1984 she reported that she was able to lift up to 10 pounds, to write with her right hand and to use that hand to pick up a cup. Since the appellant had the ability to write and manipulate small objects with her right hand the ALJ determined that the impairment did not significantly limit appellant's ability to perform a full range of sedentary work. At the hearing, the ALJ noted appellant was full weight bearing with the use of a cane and that as a result of her hip impairment she is restricted from prolonged standing and

walking. However, the ALJ opined that the medical evidence does not support her allegation that she cannot tolerate prolonged sitting. We believe that there is substantial evidence to support the ALJ's conclusion.

■ Lastly, the appellant alleges that the use of the grid in making the disability determination was error. Appellant claims that Section 200.00, Appendix II, subpart P, Regulation No. 4 states that the "Grids" are only to be given conclusive effect if there are no non-exertional impairments. This is an inaccurate interpretation of the rule. The court in *Kirk* while discussing Section 200.00(e), Appendix II, subpart P, found that if a non-exertional limitation restricts a claimant's performance of a full range of work at the appropriate functional capacity level, only then is it error to apply the grid to make a conclusive determination as to disability. *Kirk*, 667 F.2d at 528, 529. The ALJ found that appellant could perform a full range of sedentary work and therefore was not in error when he applied the grid.

Having found that there is substantial evidence to support the Secretary's decision that appellant is capable of performing sedentary work, we accordingly AFFIRM the judgment of the district court.