872 F.2d 1023
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Edward ALFERY, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 88-1394.
 United States Court of Appeals, Sixth Circuit.
 April 17, 1989.
 
 Before MERRITT and BOGGS, Circuit Judges and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Claimant Edward Alfery appeals from the judgment of the district court in this action seeking judicial review of the final decision of the Secretary of Health and Human Services (the Secretary) pursuant to 42 U.S.C. Sec. 405(g). For the following reasons, we affirm the judgment of the district court.
 
 I.
 
 2
 On October 6, 1986, claimant applied for a period of disability and disability insurance benefits alleging a disability as a result of "nerves in back to legs L5-S1 disc" and a disability onset date of June 2, 1983. His application was denied initially and upon reconsideration. He requested a hearing, which was held before an Administrative Law Judge (ALJ) on March 10, 1987.
 
 
 3
 The ALJ considered the following evidence. Claimant testified that he was born on May 26, 1939, had completed the eighth grade, and that he worked as a hospital maintenance man and as a security guard for two employers. On one of the security guard jobs, claimant said he walked for fifteen to twenty minutes per hour, while on the other he walked for an hour then sat for three to four hours. In 1978, he underwent back surgery. He testified that he quit working in 1983 due to increased pain. He stated that his activities are severely limited due to pain and loss of motor skills.
 
 
 4
 The medical record contained reports from Dr. M. Nikpour and Dr. Akemi Takekoshi.
 
 
 5
 Upon examination, Dr. Nikpour found that ranges of motion were not limited, and that the lungs, heart and abdomen were normal. Dr. Nikpour noted some atrophy of the lower thigh and absent ankle jerk on the right ankle, but noted no tenderness and a normal motor examination. Tests were conducted at St. Joseph Hospital, which revealed a normal whole body scan, with evidence of only mild degenerative disc disease and mild hypertrophic changes in the joints. His echocardiogram was normal; EMG and CBC were within normal limits. A lumbar spine x-ray, CT scan, brain and pelvis scans were also normal. The only abnormalities appeared on a CT scan of the lumbar spine, which showed evidence of one or more sequestered disc fragments within the upper (S1) sacro-canal. There was also evidence of a previous myelography and a right-side laminectomy, with osteoarthritis resulting in abnormal tissue density possibly caused by post-operative fibrosis. Since Dr. Nikpour could find no orthopedic problems to provide a causal relationship for claimant's subjective complaints of pain, he was referred to Dr. Takekoshi.
 
 
 6
 Claimant was examined by Dr. Takekoshi who found that claimant had a normal range of motion of the lumbar spine, normal motor and reflex testing, normal straight-leg raising and no muscle spasms. The only abnormality was a diminished temperature sensation below the knees indicating possible peripheral polyneuropathy. He was able to walk on his heels and toes, squat, climb stairs and get on and off the examining table. He required no ambulation aids and there were no shoulder limitations. Again, despite claimant's claim of consulting an orthopedic physician prior to his seeing Dr. Nikpour, Dr. Takekoshi found no swelling, erythema, heat, deformity, atrophy, pain, tenderness or instability of the knees. Dr. Takekoshi was of the opinion that the conduction defect was possibly related to his previous back surgery. The extensive neurological evaluation conducted by Dr. Takekoshi resulted in a finding of only status post-lumbar disc surgery with no evidence of active radiculopathy. The clinical evidence of peripheral polyneuropathy suggested a central nervous system abnormality, possibly multiple sclerosis, but "brain stem auditory evoked potential" was normal as was visual evoked potential. The somatosensory evoked potentials suggested a possible conduction defect in the large fibro-sensory system. Nevertheless, there was normal EEG waking and drowsiness tracing.
 
 
 7
 The ALJ also considered the testimony of Dr. Benjamin Lewis, a medical advisor. Dr. Lewis diagnosed status post-laminectomy syndrome with possible fibrosis about the operative site. Dr. Lewis opined that, depending upon the credibility of claimant's complaints of pain, he would be limited to sedentary work with a sit/stand option. Dr. Lewis also opined that if claimant were in constant pain, he would not be able to perform even sedentary work.
 
 
 8
 Finally, the ALJ considered the testimony of Raymond Dulecki, a vocational expert. Dulecki testified that claimant's maintenance job was semi-skilled and medium in exertional demand, while his security guard jobs were semi-skilled and light in exertional demand. He went on to state that if the ALJ were to find that claimant could only perform sedentary work with a sit/stand option, claimant would not be able to return to his past relevant work. He also stated that if claimant could perform sedentary work with a sit/stand option, there were 2000 sedentary security jobs in the area, 3000 complex assembly jobs, and 10,000 unskilled sedentary jobs that would have a sit/stand option.
 
 
 9
 On May 6, 1987 the ALJ issued his opinion and found that "because the claimant retains the residual functional capacity to perform his past relevant work as a sedentary security guard, he is not disabled within the meaning of the Social Security Act."
 
 
 10
 The Appeals Council denied claimant's request for review, and the ALJ's decision became the final decision of the Secretary. Claimant filed an action for judicial review under section 205(g) of the Act in the district court. The matter was referred to a magistrate who held that the Secretary's findings were supported by substantial evidence and recommended entering judgment for the Secretary. The district court accepted the magistrate's recommendation and entered judgment for the Secretary. Claimant timely appeals.
 
 II.
 
 11
 This court has jurisdiction on appeal to review the Secretary's decision pursuant to 42 U.S.C. Sec. 405(g), which specifies that the Secretary's factual findings are conclusive if supported by substantial evidence. " 'Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir.1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)), cert. denied, 461 U.S. 957 (1983). In determining this question, we must examine the evidence in the record "taken as a whole." Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980), and " 'must take into account whatever in the record fairly detracts from its weight.' " Beavers v. Secretary of Health, Educ. & Welfare, 577 F.2d 383, 387 (6th Cir.1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). If it is supported by substantial evidence, the Secretary's determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir.1983) (per curiam). "Thus the court may not try the case de novo nor resolve conflicts in evidence, nor decide questions of credibility." Gaffney v. Bowen, 825 F.2d 98, 100 (6th Cir.1987).
 
 
 12
 Claimant argues that the Secretary did not properly evaluate his subjective complaints of pain.[1]
 
 
 13
 We review claimant's allegations of disabling pain under the following standard. Initially, there must be objective evidence of an underlying medical condition. If such evidence exists, there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged disabling pain. Duncan v. Secretary of Health & Human Servs., 801 F.2d 847, 853 (6th Cir.1986).[2]
 
 
 14
 The Secretary concedes that there is objective medical evidence of an underlying medical condition, therefore, meeting the first prong of the Duncan test. The Secretary contends that claimant has failed to meet either of the two alternatives set forth in the second prong. We agree.
 
 
 15
 The record is devoid of any objective medical evidence of severe pain, nor did the objective medical evidence indicate that claimant's underlying condition was of such a severity that it could be expected to produce disabling pain. We note that neither of the physician's reports diagnose disabling pain. To the contrary, Dr. Takekoshi after examining claimant explicitly found no pain in the lumbo-sacral spine. Furthermore, we also note that most of claimant's tests indicated only mild degenerative disc disease and mild hypertrophic changes in the joints. His EKG, EMG and CBC were within normal limits. Dr. Takekoshi reported normal motor and reflex tests and normal straight-leg raising with no muscle spasms. Claimant was able to walk on his heels and toes, squat, climb stairs, and get on and off the examining table. Based on the objective medical evidence in the record, we hold that the Secretary's finding that claimant does not suffer disabling pain is supported by substantial evidence.
 
 
 16
 Claimant also argues that the ALJ improperly discounted the vocational expert's classification of his past work. While the vocational expert classified claimant's work as a security guard as light, the ALJ determined that it was sedentary work and found that claimant could perform this work.
 
 
 17
 The regulations give the following definitions of sedentary and light work:
 
 
 18
 (a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
 
 
 19
 (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting must of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
 
 
 20
 20 C.F.R. Sec. 404.1567. In discounting the vocational expert's classification, the ALJ engaged in the following analysis:
 
 
 21
 In Exhibit 6, the claimant indicated that one of his security guard jobs involved sitting for seven of eight hours and no lifting. Obviously, the security guard job described in Exhibit 6 was of a sedentary exertional level only. The undersigned also notes that this is consistent with the claimant's testimony at the hearing wherein he indicated that his first security guard job required him to walk around for one hour, sit for three to four hours, walk around for another hour, and then sit for three to four hours, which again is consistent with sedentary work.
 
 
 22
 Since the regulations define sedentary work as work involving occasional walking and standing while light work involves a good deal of walking, and since the record indicates that one of claimant's security guard jobs involved walking only one to two hours in an eight hour day, we hold that the ALJ's finding concerning claimant's past relevant work is supported by substantial evidence.
 
 
 23
 For the foregoing reasons, we AFFIRM the judgment of the district court.
 
 
 
 [1]
 Claimant also argues that the ALJ improperly discounted his testimony. "The ALJ is charged with the responsibility of observing the demeanor and credibility of witnesses therefore his conclusions should be highly regarded." Bradley v. Secretary of Health and Human Servs., 862 F.2d 1224, 1227 (6th Cir.1988) (citing Kirk, 667 F.2d at 538). In the instant case, the ALJ meticulously analyzed claimant's testimony and presented a reasoned analysis for discounting it. We find no error in the ALJ's approach or conclusion
 
 
 [2]
 This court has recently held that the Duncan standard is applicable to cases decided after January 1, 1987, the sunset of the Social Security Disability Reform Act of 1984. McCormick v. Secretary of Health and Human Servs., 861 F.2d 998, 1003 (6th Cir.1988)