875 F.2d 867
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Mary Lou SHEETS, Plaintiff-Appellant,
v.
Otis R. BOWEN, M.D., Secretary of Health and Human Services,
Defendant-Appellee.
 No. 88-3463.
 United States Court of Appeals, Sixth Circuit.
 May 9, 1989.
 
 Before WELLFORD and RALPH B. GUY, Jr., Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Claimant, Mary Lou Sheets, appeals the district court's decision affirming the Secretary of Health and Human Services' (Secretary) denial of disability benefits available under Title II of the Social Security Act, 42 U.S.C. Secs. 416(i), 423(a). Sheets claims that her denial of benefits was improper because (1) the Secretary erroneously determined that her impairment did not satisfy section 5.07(A) of the Listing of Impairments; (2) the Secretary's finding that she can perform her past relevant work is not supported by substantial evidence; and (3) the Secretary failed to properly establish that she can perform other work existing nationally or regionally in significant numbers. We affirm the denial of benefits.
 
 
 2
 Mary Lou Sheets is a fifty-three year old woman with a high school education. She has worked for several years as a bookkeeper and secretary. She is five feet three inches tall and weighs approximately 214 pounds. Sheets filed an application for social security benefits in September 1985, alleging that she became disabled due to Crohn's disease[1] in September 1983. Sheets' claim for benefits was administratively denied initially and upon reconsideration. Her claim was also denied following a hearing by an administrative law judge (ALJ). The Appeals Council declined to review her claim further and the district court affirmed the ALJ's determination.
 
 
 3
 In support of her claim, Sheets testified that she suffers from "recurrent, intermittent, unpredictable and variable diarrhea," accompanied by abdominal bloating or swelling, discomfort, nausea, and pain. Sheets indicated that she has been afflicted with this condition since 1977 and that her symptoms recur every month or two for one to three weeks at a time. She indicated that under normal circumstances she must use the bathroom seven to eight times daily. During flare-ups of her condition, however, her usage increases to from ten to fourteen times daily. She uses a heating pad daily and is able to engage in a limited amount of housekeeping as well as crocheting, knitting, and watching television.
 
 
 4
 The medical evidence before the ALJ revealed that Sheets' Crohn's disease was diagnosed during a 1984 operation to remove her gall bladder.[2] In December 1984, Dr. Caldwell performed other radiographic tests on Sheets' gastrointestinal tract, which indicated that the distal 30 to 40 centimeters of the ileum appeared markedly abnormal with thickening of the walls, irregularity, and narrowing of the lumen, consistent with the patient's Crohn's disease. After describing these findings, the radiologist interpreted them as clinically indicative of "Crohn's disease [of the] distal ileum," with an "otherwise normal upper GI and small bowel follow through." (App. 94). In a later report to the Bureau of Disability Determination, Dr. Caldwell elaborated on his findings. He noted that Sheets' diarrhea improved with medication (Azulfidine). He also indicated that he found no evidence of chronic obstruction, fistula formation, intractable abscess, recurrent ulceration, or duodenal or gastric ulceration. (App. 95). This lack of clinical signs was corroborated by Dr. French, Sheets' internist (App. 99), and Dr. Parker (App. 103), the surgeon who removed her gall bladder.
 
 
 5
 The ALJ considered the evidence of disability in accordance with the five-step sequential analysis for evaluating disabilities, 20 C.F.R. Sec. 404.1520. He concluded that, although Sheets had not engaged in substantial gainful activity since 1983, and although her Crohn's disease/regional enteritis constitutes a severe impairment, her impairment did not meet or equal a listed impairment. He found that Sheets' allegations of debilitating symptomatology were not credible to the extent that they precluded her from working on a regular basis. He further determined that she retained the residual functional capacity to perform at least sedentary and light work on a regular basis, including her past relevant work as a secretary/bookkeeper because that work did not require tasks precluded by any exertional or non-exertional limitations. In short, the ALJ determined that Sheets was not under a disability within the meaning of the Act before or at the time of his decision.
 
 I.
 
 6
 Our standard of review in this case requires us to affirm the Secretary's determination provided that his factual findings are supported by substantial evidence on the record as a whole. Kirk v. Secretary, Health & Human Services, 667 F.2d 524 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (citing Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).
 
 
 7
 The administrative regulations established pursuant to the Act establish a five-step sequential analysis for evaluating disability. If at any point in the analysis it is determined that a claimant is not disabled or if a claimant's impairment does not meet the twelve-month duration requirement of the Act, further review is unnecessary. The sequential analysis consists of the following considerations:
 
 
 8
 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 CFR 404.1520(b));
 
 
 9
 2. An individual who does not have a "severe impairment" or impairments the combined effect of which is severe will not be found to be "disabled" (20 CFR 404.1520(c) and section 223(d)(2)(C) of the Social Security Act, as amended);
 
 
 10
 3. If an individual is not working and is suffering from a severe impairment or combination of impairments which meets the duration requirement and which "meets or equals a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 CFR 404.1520(d));
 
 
 11
 4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 CFR 404.1520(e));
 
 
 12
 5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 CFR 404.1520(f)).
 
 
 13
 (App. 13). As noted, the ALJ determined that Sheets' severe impairment did not satisfy section 5.07(A) of the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. It is at this juncture that Sheets claims error occurred. She claims that although her impairment may not have "met" the medical criteria in the listing for regional enteritis, her impairment "equalled" the listing within the meaning of 20 C.F.R. Secs. 404.1520(d), 404.1526, and that the ALJ and district court erred in failing to consider medical equivalency in adjudicating her claim.
 
 
 14
 The Listing of Impairments essentially describes impairments for each major body system that are deemed sufficiently severe to prevent the afflicted person from engaging in any gainful activity. 20 C.F.R. Sec. 404.1525(a). Moreover, the Listing of Impairments contemplates that the described impairment is permanent, expected to result in death, or last for some specified duration. Id. To satisfy a listing requires more than the diagnosis of the listed impairment. The findings shown in the listing must also be demonstrated. 20 C.F.R. Sec. 404.1525(d).
 
 
 15
 The listing for regional enteritis provides:
 
 
 16
 5.07 Regional enteritis (demonstrated by operative findings, barium studies, biopsy, or endoscopy). With:
 
 
 17
 A. Persistent or recurrent intestinal obstruction evidenced by abdominal pain, distention, nausea, and vomiting and accompanied by stenotic areas of small bowel with proximal intestinal dilation; or
 
 
 18
 B. Persistent or recurrent systemic manifestations such as arthritis, iritis, fever, or liver dysfunction, not attributable to other causes; or
 
 
 19
 C. Intermittent obstruction due to intractable abscess or fistula formation; or
 
 
 20
 D. Weight loss as described under Sec. 5.08.
 
 
 21
 20 C.F.R. Part 404, Subpt. P, App. 1 Sec. 5.07.
 
 
 22
 The regulations governing findings of medical equivalence provide, in pertinent part:
 
 
 23
 Sec. 404.1526 Medical equivalence.
 
 
 24
 (a) How medical equivalence is determined. We will decide that your impairment(s) is medically equivalent to a listed impairment in Appendix 1 if the medical findings are at least equal in severity and duration to the listed findings. We will compare the symptoms, signs, and laboratory findings about your impairment(s), as shown in the medical evidence we have about your claim, with the medical criteria shown with the listed impairment....
 
 
 25
 (b) Medical equivalence must be based on medical findings. We will always base our decision about whether your impairment(s) is medically equal to a listed impairment on medical evidence only. Any medical findings in the evidence must be supported by medically acceptable clinical and laboratory diagnostic techniques. We will also consider the medical opinion given by one or more medical or psychological consultants designated by the Secretary in deciding medical equivalence. (See Sec. 404.1616.)
 
 
 26
 (c) Who is a designated medical or psychological consultant. A medical or psychological consultant designated by the Secretary includes any medical or psychological consultant employed or engaged to make medical judgments by the Social Security Administration, the Railroad Retirement Board, or a State agency authorized to make disability determinations. A medical consultant must be a physician....
 
 
 27
 20 C.F.R. Sec. 404.1526.
 
 
 28
 The ALJ is responsible for determining whether a claimant's condition meets or equals a listed impairment, but the decision on medical equivalency must be based on the medical opinion of one or more physicians designated by the Secretary. 20 C.F.R. Sec. 404.1526(b), (c). Social Security Ruling 83-19 (Ruling 83-19) provides that the signature of a state agency physician on disability determinations is probative evidence that medical equivalence has been considered.
 
 
 29
 Sheets claims that her impairment is medically equivalent to the listing for regional enteritis at section 5.07(A), notwithstanding the fact that she has not demonstrated "proximal intestinal dilation." She claims that under Ruling 83-19 the Secretary is authorized to find that an impairment equals a listed impairment when one or more of the specified findings is missing and other medical findings of equal or greater significance related to the same impairment are demonstrated by medical evidence. In this case, Sheets relies on her chronic diarrhea as a medical finding of equal or greater medical significance sufficient to dictate a finding of equivalency and satisfaction of the section 5.07(A) listing.
 
 
 30
 Our review of section 5.07(A) persuades us that proximal intestinal dilation is not the only finding lacking in Sheets' case. Rather, as noted by the ALJ, Sheets has not established the presence of persistent or recurrent intestinal obstruction. She has demonstrated several of the symptoms evidencing such obstruction including abdominal pain, distention, nausea, and a thickening of the lumen of the small intestine but can point to no medical evidence establishing the requisite persistent or recurrent intestinal obstruction itself. Hence, Sheets has not demonstrated the explicit condition listed at section 5.07(A), notwithstanding the presence of symptoms that would otherwise evidence that condition.[3]
 
 
 31
 As for Sheets' claim that medical equivalency was not considered by the ALJ, the Secretary's brief notes that agency staff physicians Dr. Liepack and Dr. Cho independently reviewed the medical evidence and fully considered Sheets' diarrhea before concluding that her impairment did not prevent her from working. Their signatures on the disability determination and transmittal forms implicitly indicate that Sheets did not meet or equal section 5.07(A) of the Listing of Impairments. Hence, contrary to Sheets' view that the agency physicians failed to consider equivalency, the issue presumably was considered and rejected.
 
 
 32
 We, like the district court, conclude that the ALJ's determination that Sheets failed to satisfy the Listing of Impairments necessary to establish disability is supported by substantial evidence.
 
 II.
 
 33
 Sheets next argues that the Secretary's determination that her impairment did not preclude performance of her past relevant work is not supported by substantial evidence. We note that under the sequential analysis employed by the Secretary in determining disability, when the medical evidence establishes a severe impairment that fails to meet or equal a listing, the claimant must prove that her impairment precludes her from returning to her past relevant work. Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980). To that end, Sheets relies on the severe stomach cramps, diarrhea, and burning sensations during bowel movements that accompany her frequent flare-ups of her condition and require extensive bed rest as evidence of her lack of residual functional capacity to perform her past relevant work. She also relies on a letter from Dr. French suggesting that her diarrhea and abdominal discomfort would make "steady work difficult due to its variability and unpredictability." (App. 115). Finally, a letter from Sheets' former employer indicated that her "absenteeism rose to an extremely high rate" during her last few months at work and might have led to her termination had she not left work voluntarily. (App. 117). Sheets further claims that the ALJ improperly relied on her obesity as a basis for rejecting her allegations of disabling symptoms.
 
 
 34
 The ALJ concluded that the evidence failed to establish symptomatology of sufficient frequency and severity to preclude the claimant from working. (App. 15). Although Sheets alleges total disability from regional enteritis since 1983, she offered no medical evidence regarding her condition until October 1984. Moreover, notwithstanding her diagnosis of regional enteritis, Drs. Parker, Caldwell, and French noted her lack of signs of significant disease involvement including chronic obstruction, fistula formation, intractable abscesses, or recurrent, duodenal or gastric ulceration. Moreover, her doctors noted an improvement in her diarrhea with medication, and none indicated that her condition warranted surgical intervention. Sheets' weight was only one of several factors considered by the ALJ in determining that the medical evidence did not support Sheets' allegations of debilitating symptomatology. He noted that she was able to maintain employment for several years and engage in routine daily activities despite her condition. The ALJ gave minimal weight to the employer's letter regarding Sheets' absenteeism because it lacked sufficient, specific corroboration of the alleged frequent job absences. Although Dr. French's letter indicated that Sheets' diarrhea would make steady work difficult, the letter also stated that because her condition is intermittent, it is difficult to ascertain her job limitations. (App. 115). Moreover, he refused to testify that she was precluded from working altogether. Even if Dr. French's opinion were construed to establish that Sheets' condition is totally disabling, his opinion, as her treating physician, would not be wholly credible because it lacks the requisite supporting medical findings or objective data that would otherwise entitle it to deference. See King v. Heckler, 742 F.2d 968, 972 (6th Cir.1984).
 
 
 35
 Finally, Sheets' subjective allegations of disabling pain and symptoms were discredited by the ALJ in view of the lack of objective medical evidence to support them. We note that subjective allegations of disabling pain and symptoms alone are insufficient to establish disability. See 20 C.F.R. Sec. 404.1529. Moreover, in Duncan v. Secretary of Health & Human Services, 801 F.2d 847, 853 (6th Cir.1986), we noted that to establish a disability based on pain:
 
 
 36
 First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain....
 
 
 37
 In this case, in weighing the evidence before him, the ALJ determined that the objective medical evidence did not support Sheets' allegations of debilitating symptomatology. Accordingly, he allegations were discredited to the extent that they precluded her from engaging in her past relevant work as a secretary and bookkeeper.[4] We decline to disturb the ALJ's credibility determination, Gaffney v. Bowen, 825 F.2d 98, 101 (6th Cir.1987), and find that his determination is supported by substantial evidence.
 
 III.
 
 38
 In her final argument, Sheets contends that her nonexertional impairment (regional enteritis) precludes the Secretary from using the medical-vocational guidelines (the "grids"), 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 202.13, to determine, without vocational evidence, that Sheets can engage in light and sedentary work. Because the Secretary failed to produce any vocational testimony, the argument proceeds, he has not sustained his burden of proving that Sheets can perform other work existing nationally or regionally in significant numbers. We reject this argument because the Secretary did not rely on the grids for his decision. Rather, the Secretary stopped at step four of the sequential analysis after concluding that Sheets could engage in her past relevant work, which is consistent with light and sedentary work. See supra n. 4. This conclusion was based on full evaluation of all of her alleged symptoms and functional limitations. Her allegations were found to be not entirely credible. Hence, Sheets' argument that her non-exertional limitations prevent the Secretary from using the grids for decision-making is without merit.
 
 
 39
 For the foregoing reasons, the decision of the district court affirming the Secretary's denial of benefits is AFFIRMED.
 
 
 
 [1]
 Crohn's disease, also known as regional enteritis or ileitis, refers to a "chronic granulomatous inflammatory disease of unknown etiology, commonly involving the terminal ileum with scarring and thickening of the bowel wall; it frequently leads to intestinal obstruction and fistula and abscess formation." Dorland's Medical Dictionary 377, 762 (25th ed. 1974)
 
 
 [2]
 Sheets had been complaining of an "irritable bowel syndrome," indigestion, and upper abdominal pain. Crohn's disease was not initially considered because barium enema and sigmoidoscopy examinations were essentially normal. (App. 102). Accordingly, her symptoms were attributed to a 2.1 cm gallstone observedradiographically, and removal of her gall bladder was recommended
 
 
 [3]
 We also note that Sheets did not offer evidence to qualify for a disability under section 5.07(B) of the Listing of Impairments. Medical evidence negated the presence of intractable abscess or fistula formation, which precludes a finding of intermittent obstruction under section 5.07(C). Finally, Sheets, who has been diagnosed as obese, failed to satisfy the finding of weight loss associated with regional enteritis under section 5.07(D)
 
 
 [4]
 Sheets indicated that at her job as a secretary/bookkeeper, she sat from six to eight hours daily and was not required to do any lifting or carrying. Thus, her past relevant work was deemed consistent with a residual functional capacity for light and sedentary work, even though such work might entail some lifting and carrying. 20 C.F.R. Sec. 404.1567(a), (b)