916 F.2d 712
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Elizabeth GENTRY, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 90-5009.
 United States Court of Appeals, Sixth Circuit.
 Oct. 22, 1990.
 
 Before KEITH and MILBURN*, Circuit Judges, and ZATKOFF, District Judge**.
 PER CURIAM.
 
 
 1
 Elizabeth Gentry appeals from the judgment of the district court in favor of the Secretary of Health and Human Services affirming the Secretary's denial of social security disability benefits. Before reaching the district court, the claim went through three administrative hearings before an ALJ and two remands by the Appeals Council. The Appeals Council declined to review the ALJ's denial of benefits dated August 26, 1988, and Gentry filed a civil complaint in the district court. The matter was referred to a magistrate, and the district court adopted the magistrate's recommendation to affirm the denial of benefits. For the reasons that follow, we affirm the judgment of the district court.
 
 I.
 
 2
 Gentry is a forty-four year-old obese female with a seventh-grade education and past relevant work experience as a nurse's aide. Her past work was classified as heavy, unskilled work.
 
 
 3
 Gentry was injured in a fall at work in 1983. At the administrative hearings, Gentry testified of pain which precludes any ability to work. According to Gentry, her pain also renders her unable to drive and impairs her ability to do household chores.
 
 
 4
 Despite her complaints of pain, a treating physician, Dr. Gordon Air, M.D., has consistently maintained that Gentry can work as long as the work does not involve heavy lifting or repeated bending. X-rays of the lower back revealed only mild degenerative disease and mild narrowing of the disc spaces. A neurological examination was normal. Straight leg raising tests were negative. An EMG was completely normal, and a CAT scan revealed only mild bulging of a disc at the L5-S1 level which Dr. Air read as clinically insignificant. J.A. 384-85.
 
 
 5
 Several treating physicians, including Dr. Aurora Lira, advised the claimant to return to work at one time or another during the course of treatment. Dr. Lira first saw the claimant in January of 1985 for complaints of shortness of breath, soreness in the rib cage, and a suspected enlarged heart. The results of a physical examination and an EKG were essentially normal. Dr. Lira referred Gentry to a cardiologist, Dr. Zimmer, M.D., and his examination was essentially unremarkable except for a notation that the claimant was obese. An EKG, an angiogram, an echocardiogram, and other laboratory studies were within normal limits.
 
 
 6
 A chiropractor noted that he began seeing the claimant in February of 1987 and that in April of 1987 her symptoms became "more severe." X-rays taken in October of 1987 revealed "minimal degenerative changes." The chiropractor opined that Gentry had a herniated disc at the L5-S1 interspace.
 
 
 7
 When seen by Dr. John Berry, M.D., in December of 1987, Gentry was able to climb on and off the examining table without difficulty, and lower back motion was only moderately limited in flexion and mildly limited in lateral bending and extension. A neurological examination was essentially unremarkable; however, there was some tenderness in the back area. Dr. Berry did note some behavior consistent with pain "consisting of frequent changes of position, tensing and wincing during ... the examination." Dr. Berry's conclusion was that vocational rehabilitation would not be helpful because the claimant had "chronic pain syndrome."
 
 
 8
 The record contains a residual functional capacity assessment dated June 2, 1988, by Dr. Lira which, in essence, precludes any ability to work. However, the conditions cited as underlying the limitations were anxiety and degenerative arthritis of the spine and knee. The record does not reveal that Dr. Lira treated Gentry for any of these conditions or that Dr. Lira performed any objective tests to substantiate her assessment. In fact, x-rays taken by the St. Elizabeth Medical Center in 1987 while Dr. Lira was the treating physician noted only minimal degenerative arthritic changes. J.A. 476-77.
 
 
 9
 The record also contains a vocational evaluation performed by Bawac, Inc., an independent consultant. The evaluation relied in part on Gentry's statements that she suffered from arthritis, decreased hearing, and heart problems. The evaluation also cited severe restrictions in the ability to stand, walk, lift, etc., as reported by Dr. Lira. The report also noted a psychological diagnosis of "mixed personality disorder."
 
 
 10
 The evaluation recognized a physical capability to perform sedentary level work but concluded that with Gentry's "limited work experiences, limited academic skills, and significant physical restrictions resulting from a back injury," Gentry was "unable to maintain remunerative employment." It is noteworthy that the report recognized that the claimant could "overcome her physical limitations" given sufficient motivation. J.A. 336.
 
 
 11
 In the record, there is also a medical assessment of Gentry's ability to do work-related activities by Dr. Michael O'Brien. Dr. O'Brien's assessment was essentially consistent with the ability to do sedentary level work but was not accompanied by the results of any objective testing. In the course of treating Gentry for lumbar strain, Dr. O'Brien "told her she probably just needs to lose some weight."
 
 
 12
 At the last administrative hearing, a vocational expert ("V.E.") testified that based upon Dr. Air's assessment, the claimant could perform sedentary level work that is available in the national and local economies. The V.E. listed several specific jobs which the claimant could perform. The V.E. testified that since Gentry's mental impairments did not prevent her from doing unskilled jobs in the past, her mental impairments would not preclude the jobs he identified.
 
 
 13
 The ALJ found that the medical evidence established chest pain, chronic low back pain, mental retardation, and personality disorder. However, the ALJ concluded that the impairments did not individually or in combination meet or equal the impairments listed in 20 C.F.R. Sec. 404, Subpart P, Appendix 1. The ALJ found that the impairments prevented Gentry from performing her past relevant work but did not prevent her from performing a significant number of jobs which existed in the national and local economies.
 
 
 14
 Specifically regarding Gentry's complaints of pain, the ALJ stated:
 
 
 15
 Although the claimant testified to more severe restrictions, this testimony is not supported by objective medical evidence. Specifically, the undersigned notes the consistent negative results in cardiac laboratory testing and the fact that only mild pathology was demonstrated on x-ray examination of the back. For these reasons, the claimant's testimony with respect to the severity and extent of her illness is not fully credible.
 
 
 16
 J.A. 19. Other than the above-quoted passage, there is no discussion by the ALJ of Gentry's credibility or of the test articulated in Duncan v. Secretary of Health and Human Serv., 801 F.2d 847 (6th Cir.1986), for evaluating subjective complaints of pain.
 
 
 17
 The issues presented in this appeal are (1) whether there was substantial evidence for finding that Gentry's testimony was not credible; (2) whether the Secretary applied the correct legal standard, i.e., the test enunciated in Duncan, in evaluating Gentry's subjective complaints of pain; and (3) if the Secretary did apply the correct legal standard, whether there was substantial evidence for finding that Gentry did not meet the Duncan pain test.
 
 II.
 A.
 
 18
 Our scope of review in social security cases is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary "employed the proper legal criteria in reaching those findings." Gaffney v. Bowen, 825 F.2d 98, 100 (6th Cir.1987) (per curiam). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). If substantial evidence supports the Secretary's decision, it must be affirmed even though there is alternatively substantial evidence to support a finding of disability. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir.1986) (en banc).
 
 B.
 
 19
 The claimant argues that the ALJ erred by basing his credibility assessment solely on a perceived scarcity of medical evidence. We find some merit to this argument. A perceived scarcity of medical proof should not be a determinative factor in a credibility assessment. Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir.1989) (per curiam). This, in effect, readdresses the Duncan test. Id. The ALJ did not identify any inconsistent statements or specific reasons for rejecting Gentry's credibility other than the perceived scarcity of medical proof. However, this weakness in the ALJ's methodology does not help Gentry if she cannot pass the threshold of the Duncan pain test.
 
 
 20
 In this circuit, in order for a claimant to prevail based on complaints of disabling pain,
 
 
 21
 [t]here must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.
 
 
 22
 Duncan, 801 F.2d at 853; see McCormick v. Secretary of Health and Human Serv., 861 F.2d 998 (6th Cir.1988).
 
 
 23
 The ALJ did not specifically mention Duncan in his analysis; however, he did state that the complaints of severe restriction were "not supported by objective medical evidence." In Duncan, we held that the ALJ's finding that subjective complaints were not supported by objective evidence was "tantamount to a finding that Duncan failed to satisfy the second prong of the ... standard." 801 F.2d at 853. Thus, Duncan recognizes that an ALJ's decision will not be reversed simply because of a failure to incant specific language as long as there is substantial evidence to support an implicit finding that the claimant failed under both alternatives of the second prong of the test.
 
 
 24
 In this case, as in Duncan, "none of the physicians diagnosed the pain as severe or disabling." Id. In fact, Dr. Air reported that the claimant could work if she was not required to do heavy lifting or repeated bending. Reports by other physicians were largely consistent with a capacity to do sedentary work.
 
 
 25
 Although Dr. Lira repeatedly saw Gentry for complaints of shortness of breath and heart pains, tests were repeatedly within normal limits. Dr. Lira's functional capacity assessment was based on anxiety and degenerative arthritis of the knees and spine; however, the record does not reveal that Dr. Lira ever treated Gentry for those conditions. Moreover, the functional capacity assessment was not accompanied by objective evidence. Thus, we find substantial evidence for concluding that Gentry did not meet the first alternative of the second prong of the Duncan test.
 
 
 26
 Turning to the second alternative of the second prong of the Duncan test, in this case, as in Duncan, there were repeated negative findings regarding neurological deficits; repeated mild and negative findings in x-rays, EMGs, etc.; and numerous reports by treating doctors indicating that the claimant possessed a residual ability to work.
 
 
 27
 To show that she meets the second alternative of Duncan, Gentry relies heavily upon (1) a finding by Dr. Berry that she was not susceptible to rehabilitation because of chronic pain syndrome, and (2) a report by Bawac, Inc., that she has mixed personality disorder. Gentry is correct to argue that an assessment of complaints of pain requires consideration of mental conditions which would exacerbate pain, see Blankenship, 874 F.2d at 1123; however, Blankenship does not exempt a claimant pursuing the second alternative of the second prong of Duncan from establishing the severity of the condition by objective evidence.
 
 
 28
 Despite Dr. Berry's ultimate opinion of an inability to work based partly upon "chronic pain disorder," Dr. Berry's examination of the claimant was essentially unremarkable except for some moderate limitations on her range of motion. Moreover, it is not clear that the diagnosis of chronic pain disorder was the result of objective testing rather than an attempt to explain the otherwise unexplainable complaints of pain.
 
 
 29
 The vocational evaluation by Bawac did little to help evaluate the severity of the "mixed personality disorder" and did not state that the disorder would exacerbate Gentry's pain. Moreover, the evaluation relied heavily upon Gentry's subjective complaints and a functional capacity assessment by Dr. Lira which does not appear to be substantiated with objective evidence. Thus, we hold that there was substantial evidence for finding that Gentry did not meet the second alternative of the second prong of Duncan.
 
 III.
 
 30
 Accordingly, for the reasons stated, the judgment of the district court is AFFIRMED.
 
 
 
 *
 Judge Milburn, although present at the oral hearing, recused himself and took no part in this decision
 
 
 **
 Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation