NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 04a0071n.06
Filed: November 5, 2004

No. 03-2459

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| CAITLIN M. ROONEY, | ) | |
| | ) | **ON APPEAL** FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | SOUTHERN DIVISION |
| JO ANNE B. BARNHART, COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **O P I N I O N** |
| Defendant-Appellee. | ) | |

BEFORE:   NORRIS and DAUGHTREY, Circuit Judges; OLIVER, District Judge.[*]

        **PER CURIAM.**   Plaintiff Caitlin M. Rooney appeals from the denial of her claim for

disability insurance benefits available under the Social Security Act, 42 U.S.C. §§ 416(i), 423. The

administrative law judge (ALJ) concluded that, while plaintiff suffered from a number of health

problems, she retained enough residual functional capacity to perform a significant number of

sedentary jobs in the Michigan economy.  The Appeals Council and district court affirmed the denial

of benefits.

**I.**

        The decision of the ALJ provides the factual background for this case:

---

[*]The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District of Ohio, sitting by
designation.

> The claimant is a 25 year-old individual with a B.A. degree from Williams College. Her past work experience includes employment as a customer service worker. She alleges that she became disabled on January 1, 1996 due to abdominal discomfort, irritable bowel syndrome, bladder discomfort, headaches and cognitive dysfunction.
>
> The claimant meets the non-disability requirements set forth in Section 216(i) of the Social Security Act and is insured for disability benefits through June 30, 1997. Therefore, the claimant must establish disability on or prior to this date.
>
> . . . .
>
> The claimant testified at the hearing that she first began having problems with endometriosis in 1994. The claimant testified that she returned to Williams College in Massachusetts in January of 1996 after taking off for one year for traveling. She began having abdominal pain shortly thereafter and in June of 1996 she underwent surgery for endometriosis. She was basically pain free until October 1996 when she began experienc[ing] abdominal pain during her menstrual cycle. In January of 1997 she flew to London[,] England to participate in a one month class. She described the pain at that time as constant. In April of 1997 she requested to withdraw from Williams College due to her level of pain and treatment for endometriosis. The claimant requested re-admittance to the college in November of 1998 and was granted readmission for the winter semester, 1999. The claimant reported that she graduated in June of 1999 and also took classes at Michigan State University.

The ALJ went on to catalog plaintiff's various medical treatments before reaching the following conclusion:

> The medical evidence indicates that the claimant has endometriosis; status post-laparoscopic hysterectomy and left salpingo-oophectomy; gastroesophageal reflex [sic] disease; irritable bowel syndrome; and bladder infections, impairments that are severe within the meaning of the Regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

With respect to plaintiff's claim that her mental state contributed to her disability, the ALJ made this determination:

> [T]he undersigned has carefully reviewed the reports and statements submitted by Ms. McNamara [a Williams College psychotherapist] reporting on the claimant's mental status during the period at issue. However, I cannot agree with her assessment that the claimant's [mental state] was markedly impaired in her ability to sustain concentration. Despite the claimant's medical status she was still capable of attending college classes through January 1997, including going to London[,] England and completing a course for one month. . . . The mental limitations associated with the claimant's impairments appear more likely to be related to her medications. Therefore, it is the undersigned's opinion that the claimant[,] during her treatment with Depo-Lupron and pain relievers[,] would have [been] limited []to simple repetitive tasks and work which required no written instructions and writing, and no hourly quotas.

Based upon the testimony of a vocational expert, the ALJ concluded that plaintiff "still retained the maximum sustained residual functional capacity to perform sedentary work which did no[t] expose her to any heights or dangerous machinery." According to the vocational expert, such jobs included "gate/parking attendant; addresser; and ticketer."

The ALJ issued findings summarizing his conclusion that, while suffering from a severe impairment, plaintiff was not disabled as defined by the Act because she retained the residual functional capacity to perform a range of sedentary work.

Rooney appealed the ALJ's denial of her claim to the Appeals Council, which summarily affirmed the decision of the ALJ on August 7, 2002, making the ALJ's decision the final decision of the Commissioner.

She then filed a complaint in federal district court seeking review of her denial of benefits. The district court likewise affirmed the decision.

**II.**

In a recent opinion, this court recited the standard of review that governs cases such as the one now before us:

> Under 42 U.S.C. § 405(g), the ALJ's findings are conclusive as long as they are supported by substantial evidence. *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 851 (6th Cir. 1986) (stating that this court's review "is limited to determining whether there is substantial evidence in the record to support the findings"). "'Substantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept'" *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). Furthermore, we must defer to an agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997).

> Our role is not to resolve conflicting evidence in the record or to examine the credibility of the claimant's testimony. *See Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987) (per curiam). Instead, we focus on whether substantial evidence supports the Commissioner's determination that [claimant] is not disabled within the meaning of the Social Security Act.

*Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).

To qualify for disability insurance under the Social Security Act, a person must establish that she was disabled before her insured status expired, which in this case occurred on June 30, 1997. A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, the disability must preclude the afflicted from engaging in any kind of substantial gainful employment which exists in the national economy. 42 U.S.C. § 423(d)(2)(A). The ALJ properly looked to the five-step analysis contained in 20 C.F.R. § 404.1520

when making the determination of disability. He found that, despite her medical problems, plaintiff had failed to satisfy the fifth step, which provides:

> At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4)(v).

Rooney argues that the ALJ improperly based his decision to deny her disability insurance benefits on the testimony of the vocational expert. She notes that when asked about her sensitivity to light, the vocational expert conceded, "If that would be an intolerance it would not be compatible with work, in my opinion." However, the expert also told the ALJ that jobs existed in the region that would be compatible with plaintiff's limitations:

> ALJ    Let's assume an individual of the same age and educational background as the claimant. Limited to an exertional level and a full range of sedentary with none [sic] exertional limitations of no complex tasks. Define that as one and two step only. No moving machinery, no unprotected heights, no written instructions, no writing required, no production line quotas or hourly type work. First of all, would an individual with these limitations be able to do the past work of the claimant?

> VE     No.

> ALJ    Would there be jobs in the region that would be compatible with those limitations?

> VE     Yes, I . . . would cite in the public services industry gate and parking lot attendant positions. In the business services and clerical industry addresser positions. In the wholesale and retail trade industry ticketer positions.

. . . .

- 5 -

> ALJ    All right. Let me give you a second hypothetical. Let's assume all therestrictions in the first hypothetical plus add an additional limitation of simply an inability to sustain on task work on a full-time basis due to pain, lack of concentration. And the lapses would be on an unscheduled basis, totally unpredictable. Would there be any jobs available?

VE    No, not in my opinion.

In Rooney's view, the ALJ should have relied upon the vocational expert's response to the second hypothetical question, which more accurately summarized her medical condition. However, the ALJ did not fully credit Rooney's testimony regarding pain and her ability to concentrate: "[I]n light of the overall evidence, the undersigned believes that claimant's complaints are somewhat exaggerated and out of proportion to the severity of any underlying pathology."

According to the standard of review for Social Security benefits cases discussed above, this court will not resolve conflicting evidence or examine the credibility of the claimant's testimony. *See Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987)(per curiam). We only focus on whether substantial evidence exists in the record to support the Commissioner's determination that claimant is not entitled to disability insurance benefits. Therefore, we find that there was substantial evidence in the record to support the ALJ's finding that plaintiff could perform certain unskilled work and to support the denial of her request for disability insurance benefits under the Social Security Act. 42 U.S.C. §§ 416(i), 423.

### III.

For the foregoing reasons, the judgment of the district court and the Commissioner's denial of benefits are **affirmed.**