**Maxmilliano VILLARREAL,
Plaintiff-Appellant,**

v.

**SECRETARY OF HEALTH AND
HUMAN SERVICES,
Defendant-Appellee.**

No. 85–2010.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 4, 1986.

Decided Feb. 9, 1987.

---

Jeanne M. Laurance, Saginaw, Mich., Dolores Hahn, argued, Edward J. Hoort, Flint, Mich. for plaintiff-appellant.

Michael J. Hluchaniuk, argued, Asst. U.S. Atty., Bay City, Mich., for defendant-appellee.

Before ENGEL, KRUPANSKY, and NELSON, Circuit Judges.

PER CURIAM.

After unsuccessfully pursuing claims for Social Security disability benefits and supplemental income benefits through the agency appeals process, Maxmilliano Villarreal sought relief—still unsuccessfully—in federal district court. Finding substantial evidence in support of the Secretary's denial of benefits, we shall affirm the judgment of the district court.

Claimant Villarreal filed a claim for Social Security benefits on January 17, 1983, asserting disability commencing May 31, 1981. At a hearing held before the Administrative Law Judge Mr. Villarreal testified that he was 63 years old, stood 5'6" in height, and weighed 110 pounds—10 pounds less than he weighed the year before. Although he could count, Mr. Villarreal had only a third grade education, could not read or write English, and needed an interpreter for the hearing. Mr. Villarreal complained of an intermittent appetite, back and leg pain, limitations in the use of his left hand, and pain upon lifting objects in excess of five pounds. His most recent employment, which came to a conclusion on May 31, 1981, was as a park maintenance man for Manpower. That work entailed picking up bottles and removing sand that blew under park tables. Because Mr. Villarreal sometimes had to lift up to 10 pounds, the vocational expert characterized the employment at Manpower as "light." Mr. Villarreal's previous employment as a gas station attendant also fell under that exertional category. Various other jobs held by the claimant in the past had higher exertional demands, according to the vocational expert.

Although Mr. Villarreal testified that he had trouble bathing and could only sit, stand, or walk for short periods without pain, he did acknowledge that he swept the front of his home, had no problems driving his automobile, and went out to visit acquaintances. Mr. Villarreal denied drinking alcoholic beverages, but it is maintained on appeal that he suffers from a disabling conjunction of alcoholism, diabetes, back and leg pain, colitis and gastritis. The medical record reveals that Mr. Villarreal has been repeatedly hospitalized since he stopped working in May of 1981.

This court reviews the Secretary's findings to determine whether they are supported by substantial evidence. "Substantial evidence means more than a mere scintilla of evidence, such evidence as a reasonable mind might accept as adequate to support a conclusion." *Farris v. Secretary of Health and Human Services,* 773 F.2d 85, 90 (6th Cir.1985).

■ The regulations instruct the ALJ to conduct a five step analysis in reaching a determination regarding disability. 20 C.F.R. § 404.1520. In this instance the ALJ acknowledged that Mr. Villarreal suffered a "severe impairment" from his uncontrolled diabetes. Although Mr. Villarreal was thus able to satisfy the "severity" requirement at the second step of the analysis, he failed to demonstrate, as the ALJ concluded, that he could no longer perform his past relevant light maintenance work at Manpower and as a gas station attendant. These findings, which have substantial support in the record, require that benefits be denied.

Unfortunately for the claimant, his own treating physician, Dr. Robert Hemphill, provided qualified opinions, at best, as to the degree of disability. In a January 21, 1983, letter to the State's Disability Determination Service, Dr. Hemphill recounted that he had treated Mr. Villarreal for diabe-

tes, colitis, and gastritis over the preceding 18 months. As of January 1983, Mr. Villarreal appeared "stable." As to the degree of disability, Dr. Hemphill thought that Mr. Villarreal "probably would be disabled from doing any type of work in which he would be under severe stress...." The doctor's second letter to the Disability Determination Service, written approximately seven months later, reiterated that the claimant's medical condition only precluded the performance of "work which could cause a lot of stress...." Finally, on April 19, 1984, Dr. Hemphill wrote Mr. Villarreal's attorney that the claimant could not do any "heavy" labor.

Given Dr. Hemphill's opinion that Mr. Villarreal was only precluded from doing work involving "heavy labor" or "a lot of stress," the ALJ could properly conclude that the claimant was able to return to his previous light work at Manpower or as a gas station attendant. Although it is maintained on appeal that the ALJ failed to consider the impairments in conjunction, the ALJ's conclusion did not depart from, and indeed relied upon, that of Dr. Hemphill. The doctor presumably considered the claimant's various medical complaints in combination, yet he offered an opinion that implied Mr. Villarreal could perform his past work.

The claimant asked the Appeals Council to consider a final document from Dr. Hemphill that was not before the ALJ. This was a January 8, 1985, "Physical Capacities Evaluation" indicating that Mr. Villarreal suffered severe exertional limitations. According to this form, the claimant could never lift more than 10 pounds, and was only able to lift one pound occasionally or infrequently. The form suggested that Mr. Villarreal could only sit for a total of four hours, stand for one hour, and walk for one hour each day. Such exertional limitations were ascribed to the claimant's arthritis and "weakness." The Appeals Council could properly refuse to credit this final report, which contained no substantiating medical data and was inconsistent with Dr. Hemphill's previous opinions. See 20 C.F.R. § 404.1527, 404.1529; *Kirk v. Secretary of Health and Human Services,* 667 F.2d 524, 538 (6th Cir.1981), *cert. de-*

*nied,* 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983).

Although Mr. Villarreal contends otherwise, the ALJ did not merely depend on Mr. Villarreal's demeanor at the hearing to determine that return to the relevant past light work was possible. The ALJ did record that "at the hearing the claimant did not exhibit any limitations as far as sitting, rising or walking." The ALJ also referred, however, to Dr. Hemphill's repeated statements that Mr. Villarreal was disabled from certain work only, and that the medical records indicated that the main complaint of diabetes responded well to treatment. We hasten to add, however, that we do not intend to belittle the significance of the ALJ's opportunity to observe the claimant. "[T]olerance of pain is a highly individual matter and a determination of disability based on pain by necessity depends largely on the credibility of the claimant." *Houston v. Secretary of Health and Human Services,* 736 F.2d 365, 367 (6th Cir. 1984). In this instance the ALJ made an adverse credibility finding, and given his opportunity to observe the claimant, his conclusions should not lightly be discarded. *Id.*

The discharge diagnoses for the hospitalizations in November of 1982 and in June of 1983 include the comment that Mr. Villarreal "tended to respond well" to treatment for his diabetes. That treatment included medication (Diabinese), diabetic classes and exercise. Although it ultimately proved to be the case that treatment with Diabinese would not control the claimant's diabetes, subsequent treatment with insulin led Dr. Hemphill to comment in April of 1984 that Mr. Villarreal's condition was "fairly stable now." Further hospitalization was required in late July of 1984, but again conservative treatment was successful. "It was found that when the patient does exercise mildly and stays on his diet, his blood sugar will stay down," according to Dr. Hemphill. Such comments from the treating physician clearly provide substantial evidence for the ALJ's determination that "if the claimant refrains from drinking alcohol, follows his diet, takes his medication as instructed and exercises mildly, his diabetic condition should remain

relatively stable," thereby permitting return to his previous light work.

The structure of the immediately preceding determination indicates that the ALJ considered the claimant's diabetes in conjunction with an alleged propensity to consume too much alcohol. The ALJ rejected, as not supported by the medical evidence, the claimed drinking problem. Although we recognize that alcoholics often refuse to recognize their dependency, Mr. Villarreal did deny at the administrative hearing that he consumed alcoholic beverages. In the past Mr. Villarreal had sometimes admitted a history of drinking, but on occasion he had told his treating physician that he was not currently consuming alcohol. The most recent diagnosis by Dr. Hemphill, in July of 1984, indicated only "[p]ossible early alcoholism." The ALJ was not precluded from crediting Mr. Villarreal's statement at the later hearing that he was not currently drinking, and we note that the claimant did not submit any further evidence to the Appeals Council to substantiate this claimed impairment.

Finally, there is no doubt that substantial evidence buttresses the ALJ's determination as to Mr. Villarreal's ailments of gastritis and colitis and back and leg pain. In November of 1982 the claimant was treated for colitis and was complaining of nausea, diarrhea, cramping and general abdominal discomfort. However, clinical testing of the gastrointestinal tract at the time "did not reveal any definite pathology," and because the patient responded well to the treatment for diabetes, his condition on discharge was said to be "satisfactory." It is true that the claimant suffered a loss of appetite and nausea in June of 1983, but colitis and gastritis were not even listed among the impressions recorded by Dr. Hemphill. Finally, the hospital records covering the claimant's treatment in July of 1984 say the "patient denies nausea, vomiting, abdominal pain, ... or appetite change", and the treating physician's diagnosis provides no suggestion that gastrointestinal problems played a role in any difficulties encountered in controlling Mr. Villarreal's diabetes. Rather, the claimant was advised to eat regularly and avoid drinking alcohol.

Concerning back and leg pain, the July, 1984, examination of the claimant led to a notation of pain in the lumbar spine. The severity of this pain is not recorded, however, and only an unquantified "restriction to side bending bilaterally in the cervical spine" was noted. Back and leg pain were not even of sufficient severity to merit discussion in Dr. Hemphill's July, 1984, discharge diagnosis nor in his previous letters to Michigan's Disability Determination Service. When earlier in June of 1983 the claimant had complained of "quite a bit of pain in the low back, especially going down the left leg," x-rays revealed only "mild" abnormalities in the lumbar spine. Further, the treatment was simply "hot packs and massage to the low back" in combination with a low back brace. Although Mr. Villarreal takes medication to relieve his pain, the ALJ could conclude that any back or leg problems were not of such severity as to interfere with Villarreal's ability to perform his past light work. Determination of disability from pain is peculiarly within the province of the ALJ. See *Houston*, 736 F.2d at 367.

Finding substantial evidence in support of the agency's conclusion, we AFFIRM the judgment of the district court denying benefits.