833 F.2d 1012
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Norbert KOZFKAY, Plaintiff-Appellant,
v.
Otis R. BOWEN, M.D., Secretary of Health & Human Services,
Defendant-Appellee.
 No. 86-1999.
 United States Court of Appeals, Sixth Circuit.
 Nov. 24, 1987.
 
 Before RALPH B. GUY, Jr., DAVID A. NELSON, and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Norbert Kozfkay appeals the district court's order affirming the Secretary's decision to deny a period of disability and disability insurance benefits. After considering the parties' briefs and the record below, we conclude that the Secretary's decision is supported by substantial evidence. Accordingly, we affirm the order of the district court.
 
 
 2
 * Kozfkay is now 54 years old. From 1959 to 1981, he worked as a meat cutter in the food industry, which required frequent lifting of weights in excess of 50 pounds. Kozfkay completed school through the seventh grade.
 
 
 3
 In June 1984, Kozfkay applied for disability insurance benefits, alleging he became disabled on February 8, 1981. At a hearing before an Administrative Law Judge (ALJ), he alleged disability due to the lingering effects of a laminectomy performed in April 1981, including severe leg and back pain.
 
 
 4
 The ALJ held that Kozfkay was not entitled to benefits. The ALJ determined that Kozfkay was suffering from "post-laminectomy restrictions with continuing pain." However, Kozfkay did not have an impairment or combination of impairments which met or equaled those in the listing of impairments in Appendix 1 to Subpart P of Part 404. 20 C.F.R. Sec. 404.1520(d). The ALJ further found that Kozfkay retained the residual functional capacity to perform light work. Considering Kozfkay's work capacity, age, education, and prior work experience, the ALJ concluded that appellant was not disabled pursuant to Rule 202.11 of the medical vocational guidelines. 20 C.F.R. Sec. 404, Subpart P, Appendix 2.[1] The ALJ's decision was upheld by the Appeals Council, a magistrate and the district court.
 
 
 5
 Our review of the Secretary's decision is limited to determining whether it is supported by substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). A reviewing court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984) (citation omitted). "Even if the court might arrive at a different conclusion, the decision must be affirmed if supported by substantial evidence." Siterlet v. Secretary of Health and Human Services, 823 F.2d 918, 920 (6th Cir.1987) (citation omitted).
 
 II
 
 6
 Kozfkay contends that the medical evidence establishes that he has an impairment that meets or equals the impairment listed in section 1.05(C) of Appendix 1, supra, which reads as follows:
 
 Disorders of the spine:
 
 7
 C. Other vertebrogenic disorders (e.g., herniated nucleus puplosus [sic], spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:
 
 
 8
 1. Pain, muscle spasm, and significant limitation of motion in the spine; and
 
 
 9
 2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.
 
 
 10
 Under this regulation, "[a]ppropriate abnormal physical findings must be shown to persist on repeated examinations despite therapy...." Id. at Sec. 1.00(B).
 
 
 11
 There is substantial evidence in the record supporting the ALJ's conclusion that Kozfkay does not meet this listing. Dr. Douglas Pankratz, the treating orthopedic physician, examined Kozfkay on January 5, 1982, subsequent to the lumbar laminectomy. He found no evidence of any motor atrophy or sensory deficit. Deep tendon reflexes were essentially within normal limits. He confirmed these findings during an examination in March 1982. Dr. Henry Edington, an orthopedic surgeon, indicated in July 1984 that Kozfkay could heel and toe walk satisfactorily, and forward flex "to the level that [his] chin obtained the chest" and his "fingertips would obtain the knees." He also reported that there was no wasting or weakness of the musculature in the lower extremities. Dr. Kevin Brown performed a consultative examination in July 1984. Based on sensory testing, he concluded that there was "no definite anatomic sensory abnormality." Finally, Dr. Pankratz noted on March 20, 1984, that: "Sensory exam is normal. Motor strength is normal without any evidence of any atrophy." The overall neurological exam was unremarkable.
 
 
 12
 The foregoing evidence indicates that Kozfkay does not suffer from "significant motor loss with muscle weakness and sensory and reflex loss." These findings are fatal to his claim that he meets the impairment listed in section 1.05(C). See Duncan v. Secretary of Health and Human Services, 801 F.2d 847 (6th Cir.1986) (claimant cannot meet the impairment listed in section 1.05(C) if one of the elements is not met). Kozfkay's claim that his condition equals this listing also lacks merit. He has not pointed to any medical evidence showing "specific alternate medical symptoms" which are "at least equal in severity and duration to the listed findings." King v. Heckler, 742 F.2d 968 (6th Cir.1984). See also 20 C.F.R. Sec. 404.1526.[2]
 
 III
 
 13
 Kozfkay contends that the ALJ erroneously concluded that he has the residual functional capacity to perform a full range of light work. We disagree.
 
 
 14
 There is substantial evidence to support the ALJ's conclusion. Without reiterating all of the pertinent medical evidence discussed above, we note Dr. Edington's telling observation that Kozfkay could heel and toe walk satisfactorily, and "forward flex to the level that [his] chin obtained the chest" and his "fingertips would obtain the knees." He also found that there was a normal range of motion in the upper extremities, as well as the hips, knees and ankles.
 
 
 15
 Although the straight leg raising tests were moderately positive,[3] the physicians' reports unanimously concluded that Kozfkay did not have disc herniation, severe disc space narrowing or denervation. Indeed, as late as July 1984, an x-ray taken at Dr. Brown's request revealed the following: "Minimal disc space narrowing is present at L5-S1 with associated very mild productive changes. No additional abnormality is present. No fracture, dislocation, or spondylolythesis [sic] is seen." The ALJ also properly relied upon the significant fact that CAT scans, myelograms and EMG tests were consistently negative, without any definite pathology apart from disc narrowing at L5-S1 due to the 1981 laminectomy.
 
 
 16
 Moreover, a residual functional capacity assessment dated December 10, 1984 indicated that Kozfkay retained the maximum capacity to lift/carry fifty pounds, that he could frequently lift/carry twenty-five pounds, that he could stand or walk a total of six hours each day, and that he could sit a similar number of hours. Joint Appendix at 88.[4] This is consistent with Kozfkay's conservative treatment since his laminectomy, which has included traction, physical therapy, muscle relaxants and moderate analgesics. With this course of treatment, Kozfkay has consistently improved and, by his own admission, his pain has diminished.
 
 
 17
 Kozfkay argues that the ALJ improperly discounted the "uncontradicted" conclusion of the treating physician, Dr. Pankratz, that the appellant suffers from radiculopathy. Although Dr. Pankratz reported during examinations in October 1984 and May 1985 that Kozfkay was suffering from radiculopathy, his own tests did not support this conclusion. In March 1984, Dr. Pankratz indicated that a CAT scan, myelogram and EMG were all negative for persistent or recurrent radiculopathy. He repeated this conclusion in his reports of November 1984 and May 1985. On the latter date, Dr. Pankratz repeated the myelogram, in an effort to "clearly document whether there was pathology that I could identify [with respect to Kozfkay's complaints of back pain]." The myelogram was normal. A treating physician's diagnosis is entitled to substantial weight, but only if supported by sufficient medical data. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir.1985). Based on the foregoing, the ALJ could properly discount Dr. Pankratz's unsubstantiated conclusion.[5]
 
 
 18
 Although we recognize there is some conflicting medical evidence concerning Kozfkay's ailments, we are satisfied that the Secretary's decision that appellant can perform light work is supported by substantial evidence.
 
 
 19
 Lastly, Kozfkay argues that the ALJ improperly discounted his claim of severe pain. His contention must be analyzed according to the standard set forth in Duncan v. Secretary of Health and Human Services, 801 F.2d 847 (6th Cir.1986).
 
 
 20
 First, we examined whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.
 
 
 21
 Duncan, 801 F.2d at 853. See also S.Rep. No. 466, 98th Cong., 2d Sess. 24, reprinted in 130 Cong.Rec. S6221 (daily ed. May 22, 1984).
 
 
 22
 Here, there is medical evidence establishing an underlying back condition associated with a lumbar laminectomy which removed degenerate disc material at L5-S1. However, there is substantial evidence to support the ALJ's conclusion that the objective medical evidence does not confirm the severity of Kozfkay's pain. None of Kozfkay's physicians diagnosed his pain as severe or disabling. Indeed, in May 1982, Dr. Pankratz noted that appellant was not experiencing "severe pain" because he was able to "get around." Later in 1982, he noted that after conservative treatment the pain "markedly decreased until [Kozfkay] was able to be up and ambulatory." In March 1984, Dr. Pankratz described the pain as "low grade."
 
 
 23
 We also find substantial evidence supporting the ALJ's conclusion that the objectively established medical condition is not so severe that it could reasonably be expected to produce pain of the severity Kozfkay claims. Importantly, Dr. Pankrantz could not find a significant underlying medical condition which apparently was causing the alleged pain. In November 1984, he noted quite candidly, "[Kozfkay] has been a continuing puzzle to me. I have never been able to clarify the extent of his injury despite CT scans, myelogram x 2, EMG evaluations." Earlier, in 1982, this physician stated, "I feel that [Kozfkay] is sincere in his complaint [of pain], but I can find no organic explanation for it at the present time. I really have very little to offer him in treatment." These statements confirm the absence of medical evidence in the record which would indicate a medical condition reasonably expected to produce disabling pain. If such a condition were present, Kozfkay's own treating physician could not find it.
 
 
 24
 The ALJ considered the medical evidence in evaluating Kozfkay's complaints of pain. He concluded that Kozfkay's testimony was "fairly credible," but his complaints of pain were exaggerated and not supported by the medical findings. "[T]olerance of pain is a highly individual matter and a determination of disability based on pain by necessity depends largely on the credibility of the claimant." Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir.1984). The ALJ made an adverse credibility finding, and his conclusion should not be lightly discarded. Villarreal v. Secretary of Health and Human Services, 818 F.2d 461, 463 (6th Cir.1987). Based on our review of the medical evidence, we cannot say he was in error.
 
 
 25
 After reviewing the medical records, we agree with the district court that the ALJ's application of the medical vocational guidelines, which directed a conclusion of not disabled pursuant to Rule 202.11, is supported by substantial evidence. Accordingly, the district court's order affirming the Secretary's denial of benefits is AFFIRMED.
 
 
 
 [1]
 In applying the guidelines, the ALJ noted that Kozfkay was an "individual closely approaching advanced age," 20 C.F.R. Sec. 404.1563(c), with limited education, id. at Sec. 404.1564(b)(3), and non-transferable work skills
 
 
 [2]
 Kozfkay argues that the ALJ completely failed to address whether he met or equaled the impairment listed in section 1.05(C). After reviewing the record, we are satisfied that the ALJ adequately performed his administrative responsibility
 
 
 [3]
 Dr. Pankratz's later reports indicate that straight leg raising tests were negative on the left
 
 
 [4]
 An earlier residual functional capacity assessment, dated August 1984, also supports the ALJ's conclusion that Kozfkay can still perform light work. It indicated that appellant retained the maximum capacity to lift/carry twenty pounds, that he could frequently lift/carry ten pounds, that he could stand or walk a total of six hours each day, and that he could sit about six hours per day. Joint Appendix at 63. These findings track the definition of light work contained in the regulations. 20 C.F.R. Sec. 404.1567(b)
 
 
 [5]
 Kozfkay also claims the ALJ completely ignored the July 1984 report of Dr. Kevin Brown. The ALJ's decision specifically discussed Dr. Brown's findings, which also diagnosed appellant as suffering from radiculopathy. However, there is no indication that he performed any medical tests such as a myelogram or CAT scan to substantiate his diagnosis