883 F.2d 75
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Bryant T. PENTECOST, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 89-5014.
 United States Court of Appeals, Sixth Circuit.
 Aug. 22, 1989.
 
 Before BOYCE F. MARTIN, Jr., MILBURN and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Pentecost appeals from the judgment of the district court affirming the final decision of the Secretary of Health and Human Services in this action seeking review pursuant to Sec. 205(g) of the Social Security Act, 42 U.S.C. Sec. 405(g). Pentecost argues that the Secretary was not supported by substantial evidence in finding that Pentecost was not disabled due to the combination of his chronic lung disease and mild depressive disorder as he had the ability to engage in unskilled work activity at the light exertion level.
 
 
 2
 Pentecost was born July 4, 1937, is currently fifty-two years of age and has a limited eleventh grade education with specialized training in mechanics and welding. He worked as a diesel mechanic in the Navy and last worked in 1980 as a mechanic and machine maintenance person for Tennessee Valley Authority. Pentecost initially filed an application for disability benefits on September 8, 1980, alleging that he was disabled by lung disease. The administrative law judge denied Pentecost's application. The appeals council also denied review. However, on July 27, 1983, the district court granted a remand in order to supplement the record with additional medical testimony. Upon remand, the administrative law judge again denied Pentecost disability benefits and the district court, upon review, granted summary judgment in favor of the Secretary on May 16, 1985. No appeal was taken from this judgment. Pentecost filed his present application for disability benefits on October 3, 1986. Pentecost's application was denied by the administrative law judge on July 30, 1987. The appeals council denied review on October 14, 1987 and January 28, 1988. On November 30, 1988, the district court found that substantial evidence supported the finding of the Secretary and granted summary judgment.
 
 
 3
 At the hearing on June 18, 1987, Pentecost testified to a number of alleged disabilities--chest pain, dizziness, shortness of breath, back pain, stomach, and depression. The administrative law judge concluded that Pentecost suffers from "chronic obstructive pulmonary disease, asthma, anxiety, and depression," but held that "the claimant's medical condition does not significantly limit his ability to perform basic work related functions." The administrative law judge found that these impairments or combination of impairments did not rise to the level of the severe impairment rendering Pentecost disabled. The administrative law judge clearly stated that he considered the combined effect of all the impairments, regardless of severity, on Pentecost's residual functional capacity.
 
 
 4
 With respect to his stomach problems, Pentecost had been treated by a Dr. Calhoun for peptic ulcer disease. However, he takes no prescribed medication for this condition and uses over-the-counter drugs. With respect to Pentecost respiratory impairment, the evidence showed that he has chronic obstructive pulmonary disease. The administrative law judge pointed out that Dr. Calhoun's report, addressed to Pentecost's attorney, indicated that Dr. Calhoun considered Pentecost to be totally and permanently disabled with occupational asthma, asbestosis, chronic bronchial asthma and chronic asthmatic bronchitis. However, there was other substantial evidence in the record indicating that Pentecost's pulmonary functions were not as severe as indicated by Dr. Calhoun. For example, on referral by Pentecost's attorney, a Dr. Sam Traughber estimated a 30% to 45% impairment based on the evaluation for permanent impairment. On November 13, 1986, Pentecost was evaluated by a orthopedic specialists for evaluation of pain in his neck and lower back. On physical examination, Pentecost was in no obvious distress or pain and stood without a list or scoliosis. On November 16, 1986, Pentecost was evaluated by Dr. John R. Love for findings related to the rib cage. From an orthopedic standpoint, Pentecost manifested no abnormalities. On May 7, 1987, Pentecost was evaluated by a psychologist to determine his strength and weaknesses with regard to employability. This evaluation was done at the request of Pentecost's attorney. Pentecost was stated to be not disabled psychologically.
 
 
 5
 The administrative law judge concluded that Pentecost had a severe impairment within the meaning of the regulations in that he would be limited, at least to some extent, in his ability to perform strenuous work activity on a sustained basis. However, the administrative law judge stated the record did not show an impairment which met or equaled the severity of any impairment listed in Appendix I, Sub-part P, Regulations No. 4. Thus, the administrative law judge considered whether, in spite of the severe impairment, Pentecost had the residual functional capacity, to perform his past work. In evaluating Pentecost's residual functional capacity the administrative law judge considered the combined effect of all impairments, regardless of the severity. The administrative law judge further considered non-exertional aspects to Pentecost's impairment, i.e., the restrictions imposed due to his chronic lung and mild depressive disorder. With respect to Pentecost's depressive disorder, the administrative law judge found that this condition was non-severe. The objective evidence did not demonstrate more than a mild psychiatric impairment which did not result in any significant vocational dysfunction. Pentecost was not under any treatment by a mental health specialist and was not taking any medication for the treatment of a mental health condition. The administrative law judge held also that Pentecost's potential occupational base for light work was not significantly compromised by his environmental restrictions. The administrative law judge held that Pentecost did have the ability to engage in unskilled work activity at the light exertional level in spite of his determined impairments in combination.
 
 
 6
 We find that the conclusion of the administrative law judge was supported by substantial evidence and affirm. Richardson v. Perales, 402 U.S. 389, 401 (1971); Gaffney v. Bowen, 825 F.2d 98, 100 (6th Cir.1987). Although the record contains some minor inconsistent medical reports and Pentecost's own conflicting testimony, we acknowledge the discretion invested in the administrative law judge to weigh all the evidence. Myers v. Richardson, F.2d 1265 (6th Cir.1972); Villarreal v. Secretary of Health and Human Services, 818 F.2d 461 (6th Cir.1987); Bradley v. Secretary of Health and Human Services, 862 F.2d 1252 (6th Cir.1988).
 
 
 7
 For the above-stated reasons, we affirm.
 
 
 8
 RYAN, Circuit Judge, dissenting.
 
 
 9
 I dissent because, in my view, the ALJ erred by using the Medical-Vocational Guidelines "as a framework" to determine plaintiff's residual functional capacity. The ALJ found that plaintiff has a nonexertional limitation due to chronic obstructive pulmonary disease and that as a result he cannot perform a full range of light work. When a "nonexertional limitation restricts a claimant's performance of a full range of work at the appropriate residual functional capacity level, nonexertional limitations must be taken into account and a non-guideline determination made." Kirk v. Secretary of Health & Human Services, 667 F.2d 524, 528-29 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983). Courts have recognized that "where a claimant has an intolerance for atmospheric pulmonary irritants, special consideration is required, above and beyond a mechanical application of the Guidelines." Asher v. Bowen, 837 F.2d 825, 828 (8th Cir.1988) (citing cases); see also Shelman v. Heckler, 821 F.2d 316 (6th Cir.1987); Warmoth v. Bowen, 798 F.2d 1109, 1111-12 (7th Cir.1986) (quoting Social Security Ruling 85-7: "Where the environmental restriction falls between very little and excessive, resolution of the issue will generally require consultation of occupational reference materials or the services of a V[ocational] S[pecialist").
 
 
 10
 I would therefore remand this case for the ALJ to make a non-guideline determination of plaintiff's residual functional capacity, with benefit of testimony by a vocational expert.