911 F.2d 734
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Charles E. VAUGHN, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 89-2259.
 United States Court of Appeals, Sixth Circuit.
 Aug. 21, 1990.
 
 Before Merritt, Chief Judge, BOYCE F. Martin Jr. and DAVID A. NELSON, Circuit Judges.
 MERRITT, Chief Judge.
 
 
 1
 This is an appeal from the District Court's judgment upholding the Secretary's denial of claimant's application for disability benefits under the Social Security Act, 42 U.S.C. Secs. 3301 et seq. For the reasons stated below, we affirm.
 
 I.
 
 2
 The claimant, Charles Vaughn, worked from 1966 to 1977 in various jobs, including truck driver, press operator, and upholstery trimmer. He has a ninth grade education. At the time of his most recent hearing on May 16, 1988 before an administrative law judge of the Department of Health and Human Services, he was 44 years old. Mr. Vaughn left his employment as a truck driver on October 10, 1977, due to a work-related injury to two discs in his lower back. He filed this claim for benefits on February 12, 1985, one month before the expiration of his insured status, alleging that he was disabled due to the injured discs, headaches, blurred vision, arthritis, and muscle spasms. The Secretary denied the claim both initially and upon reconsideration. After remanding the case for consideration under the 1984 regulations for the evaluation of mental impairments, the Secretary again denied Mr. Vaughn's claim both initially and upon reconsideration. In both instances, Mr. Vaughn requested and received a hearing before an administrative law judge, who received a variety of evidence, including testimony from the claimant and a vocational expert.
 
 
 3
 Both prior and subsequent to filing his claim for benefits, Mr. Vaughn complained of nervousness, depression, back spasms, and leg pain, for which he was prescribed medication. He contended that the pain was aggravated by any type of activity and that it was getting progressively worse. Although the medication helped relieve his pain, Mr. Vaughn took it only sporadically, claiming it was too expensive for him to take continually. Numerous examinations from 1977 to 1986 administered by Dr. J.E. McLaurin revealed back pain and spasms, although Dr. McLaurin's most recent examinations showed some tenderness but no spasms. Another examination done by a consultative physician revealed that Vaughn suffered from degenerative disc disease and from depression. A residual functional capacity test showed that claimant, despite his limited physical capacity, could lift up to 50 pounds and could stand, walk, or sit for about six hours a day. The test results showed that Vaughn "had no significant difficulties." Magistrate's Report and Recommendation at 6.
 
 
 4
 A consultative psychiatrist examined claimant on September 12, 1987. In the psychiatrist's view, Vaughn had very low self-esteem and some retardation and anxiety, but was generally logical, relevant, cooperative, and in touch with reality. The psychiatrist concluded that Vaughn had some adjustment problems and suffered from depression.
 
 
 5
 A psychologist also examined Vaughn, whose IQ test result placed him in the below average category. Although his problem-solving and analytical skills were adequate, Vaughn showed significant psychological distress. Based on her observations and clinical data, the psychologist concluded that Vaughn was incapable of sustaining any type of gainful employment.
 
 
 6
 A vocational expert at the hearing classified Vaughn's background as ranging from unskilled to semi-skilled and from exertionally light to heavy. He testified that Vaughn's manufacturing-related skills were transferable to a significant number of sedentary jobs in the Michigan economy, including unskilled manufacturing positions with a sit-stand option. The vocational expert also testified that there were a substantial number of exertionally light jobs that Vaughn could perform in the auto-related industries, despite his physical limitations. Based on Vaughn's testimony, the expert concluded that Vaughn would be best suited to an exertionally light job involving no lifting and to be done in a standing position.
 
 
 7
 After weighing the testimony, the ALJ concluded that although Vaughn had herniated discs, muscle spasms, headaches, nervousness, and depression, he did not have an impairment within the meaning of the so-called "grid," 20 C.F.R. Pt. 404, Subpt.P, App. 1 (1989). He further found Vaughn's testimony to be "exaggerated and not fully credible." Magistrate's Report and Recommendation at 11. Prior to the expiration of his insured status, the ALJ stated, Vaughn retained the residual functional capacity to perform light work with a sit-stand option. Therefore, in the ALJ's view, Mr. Vaughn was not disabled within the meaning of the Social Security Act. On appeal, the District Court adopted the magistrate's report, which upheld the Secretary's conclusions. The District Court held both that Mr. Vaughn was not disabled by his combination of orthopedic and mental impairments and that the vocational evidence supported the ALJ's decision. From that decision the claimant now appeals.
 
 II.
 
 8
 We evaluate Mr. Vaughn's claim under the five familiar criteria found in 20 C.F.R. Sec. 404.1520 (1989), which in this case impose on the Secretary the burden of showing that there is substantial work in the national economy which the claimant can perform. If the claimant suffers only from an exertional limitation, then the Secretary may carry his burden by applying the "grid" pursuant to 20 C.F.R. Pt. 404, Subpt.P, App. 2, Sec. 200.00(e) (1989). If, as here, the claimant suffers from an additional nonexertional impairment that restricts performance of a full range of work, then the Secretary may use the grid as a framework for decision, but must rely on other evidence to carry his burden. See Damron v. Secretary of Health & Human Servs., 778 F.2d 279 (6th Cir.1985). The other evidence that the Secretary relied on here was that provided by the various medical and psychological experts as well as testimony from the vocational expert.
 
 
 9
 When a claimant's symptoms include subjective complaints of pain, our Court looks to see whether there is objective medical evidence of an underlying medical condition. If so, we then examine whether objective evidence confirms the severity of the alleged pain or whether the condition is so severe that it can reasonably be expected to produce the disabling pain. McCormick v. Secretary of Health & Human Servs., 861 F.2d 998, 1002-03 (6th Cir.1988); Duncan v. Secretary of Health & Human Servs., 801 F.2d 847, 853 (6th Cir.1986). Claimant asserts that the objective medical evidence supports his claim of disability. Although it is undisputed that Mr. Vaughn has a back problem, the ALJ ruled that the objective evidence belies his subjective claim of severe pain.[1] Because the ALJ is charged with the responsibility of observing the demeanor and credibility of witnesses, his conclusion is accorded deference. Villarreal v. Secretary of Health & Human Servs., 818 F.2d 461, 463 (6th Cir.1987). Dr. McLaurin, Vaughn's treating physician, stated that Vaughn "could reenter the labor market if he could be given a light job which did not require any excessive lifting, bending, prolonged sitting or standing." Tr. at 217. No subsequent statements of Dr. McLaurin indicate any change in Vaughn's condition prior to the expiration of his insured status. While Vaughn experiences a restricted range of motion due to back pain, the ALJ's evaluation of the medical evidence, coupled with his reliance on the vocational expert's testimony, was based on substantial evidence and thus is not subject to reversal.[2]
 
 
 10
 Claimant also contends that the ALJ failed to consider his "severe psychiatric condition" in evaluating his level of impairment. Appellant's Brief at 6. However, except for the psychologist's conclusory statement that in her opinion Vaughn was "disabled," there is nothing in the record which shows how or to what extent his psychiatric condition affected his ability to work. After considering testimony from various mental health experts, the ALJ concluded that Vaughn's mental impairment did not restrict his daily activities to the point that he could be termed "disabled." See 20 C.F.R. Part 404, Subpt.P, App. 1 Sec. 12.04 (setting forth requirements of mental impairment or "affective disorder"). It is true that Mr. Vaughn was diagnosed as suffering from depression. The expert testimony, however, when taken as a whole, fell short of showing that his depression precluded him from working. The evidence, including the results of psychiatric and psychological testing, reveals that Vaughn was oriented to time, place, and person, that his memory was unimpaired, that he could engage in logical and abstract thinking, manipulate academic information and solve problems, and that he was free from psychosis. One expert, Mr. Vaughn's psychologist, found that the combination of Vaughn's subjective complaints and his "physical distress" made him "disabled." For the Secretary to discount that conclusion in favor of other contrary evidence, evidence considered both alone and in combination with Vaughn's physical impairments, does not constitute reversible error. See Foster v. Bowen, 853 F.2d 483, 486-90 (6th Cir.1988).
 
 
 11
 Finally, Mr. Vaughn challenges the completeness of the hypothetical posed to the vocational expert by the ALJ. In evaluating this claim, it is important to recognize that the vocational expert testified at both of Mr. Vaughn's hearings, the first in 1983 and the second in 1988. At the first hearing, the ALJ found that Mr. Vaughn did not suffer from a nonexertional limitation. The hypothetical posed to the vocational expert at the first hearing, therefore, made no mention of a nonexertional impairment. At the second hearing, at which the same vocational expert testified, the ALJ asked whether, "based on the testimony today and the evidence, have you heard anything or read anything to change that testimony as far as giving the data as to the kind of work he did, the kind of work he could do based on the skills that he acquired?" J.A. at 679. The expert responded that he would amend his previous testimony to suggest that Mr. Vaughn seek work that required either that he stand or that he work from a high stool. Mr. Vaughn now claims that because the ALJ recognized his nonexertional impairment at the second hearing, the ALJ should have included that finding in his hypothetical posed to the vocational expert. This claim is without merit. Not only did the vocational expert hear Mr. Vaughn's entire testimony at both hearings, including Vaughn's references to the extent of his depression and "nerves," J.A. at 7, 18, 20, but he was cross-examined by claimant's counsel at the hearing as well. There is no reason for this Court to conclude that the expert's assessment of what jobs claimant was capable of performing failed to include a recognition of claimant's mental impairment.
 
 III.
 
 12
 Accordingly, the District Court's decision is affirmed.
 
 
 
 [1]
 The results of claimant's Minnesota Multiphasic Personality Inventory Profile, which indicate that Vaughn answered questions honestly and without evidence of malingering or exaggerating, do not undermine the ALJ's authority to make credibility determinations with regard to the extent of claimant's impairments. Villarreal, 818 F.2d at 463; Houston v. Secretary of Health & Human Servs., 736 F.2d 365, 367 (6th Cir.1984)
 
 
 [2]
 In so holding, we reject Mr. Vaughn's claim that the ALJ's assessment of claimant's residual functional capacity relied excessively on the "grid," which is to be dispositive only when the claimant suffers solely from an exertional limitation. The record indicates that the ALJ made his finding concerning claimant's residual functional capacity after reviewing all the evidence, using the "grid" only as a guide and not as the determinative factor