917 F.2d 1304
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Henry L. DANIELS, Plaintiff-Appellant,
v.
SECRETARY OF H.H.S., Defendant-Appellee.
 No. 89-2047.
 United States Court of Appeals, Sixth Circuit.
 Nov. 6, 1990.
 
 Before KEITH and RALPH B. GUY, Jr., Circuit Judges; ENGEL, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Plaintiff Henry L. Daniels, Senior ("Daniels") appeals from the district court's July 25, 1989 order granting summary judgement in favor of the Secretary of Health and Human Services (the "Secretary"). For the reasons set forth below, we AFFIRM.
 
 I.
 A.
 
 2
 Daniels filed a claim for disability benefits on February 26, 1981, pursuant to Sections 216(i) and 223 of the Social Security Act (the "Act"), 42 U.S.C. Sec. 405(g). He alleged disability commencing January 1, 1981, due to a herniated disc, kidney failure, hypertension and a seizure condition. His application was denied initially and upon reconsideration by the Social Security Administration ("SSA").[1]
 
 
 3
 On September 13, 1982, Administrative Law Judge ("ALJ") William D. Boham performed de novo review of, and denied Daniels' claim, determining that Daniels retained the residual functional capacity to perform sedentary work. The Appeals Council upheld the ALJ's determination as the final decision of the Secretary on March 14, 1983.
 
 
 4
 Daniels appealed the Secretary's denial to the United States District Court for the Eastern District of Michigan, pursuant to 42 U.S.C. Sec. 405(g) which in turn remanded the case back to the Secretary because the hearing transcript could not be prepared. Upon remand, ALJ Boham held two hearings, in order to give Daniels additional opportunities to submit favorable evidence. On March 25, 1986, the ALJ recommended that Daniels be found disabled because he suffered from a mental impairment, thus meeting the requirements of 20 C.F.R. Part 404, Subpart P at Appendix I, listing 12.08, specifying personality disorders.
 
 
 5
 The Appeals Council subsequently, on September 19, 1986 determined that the ALJ had misapplied the listing of impairments. The Appeals Council concluded that Daniels did not meet the applicable listing of mental impairments because his personality disorder did not preclude light, simple and low stress work activity.
 
 
 6
 Daniels again sought review in district court arguing that he did not retain the residual functional capacity for light, simple, and low stress work. On April 29, 1987, United States Magistrate Virginia M. Morgan recommended that the Secretary's decision denying benefits be upheld. On May 22, 1987, the district court entered an order accepting the Magistrate's recommendation in part, and rejecting it in part. The district court affirmed the Appeals Council's finding that, on the basis of his exertional limitations, Daniels maintained the residual functional capacity for light work. However, the district judge remanded the case because the Secretary's conclusion that Daniels' non-exertional limitations do not limit his capacity for light work was not supported by substantial evidence. There was no vocational evidence presented to identify light jobs Daniels could perform given the limitations due to his personality disorder. Daniels appealed the remand to this Court, which dismissed the appeal for lack of jurisdiction on September 28, 1987.
 
 
 7
 On remand, the ALJ held a hearing on May 6, 1988, at which a vocational expert ("VE") testified. Daniels made it clear at this time that he did not want to be found disabled on psychiatric grounds.[2] (Defendant-Appellee's Appendix, p. 7). The VE testified that based upon the overall record, Daniels' non-exertional limitations would not prevent the performance of substantial gainful light activity.[3] The VE further indicated that Daniels had performed semi-skilled work and acquired skills which would only be transferable to jobs of greater complexity than those of the hypothetical. In the Detroit area, however, there would be approximately 23,000 unskilled jobs which parallel the hypothetical, such as industrial manufacturing jobs: machine operators, assemblers, inspectors, sorters, machine feeders, checkers and packagers. (Transcript Index, p. 708). Service jobs such as ushers also fit the restrictions. Id. The aforementioned are, in the VE's opinion, generally considered non-stressful.
 
 
 8
 On June 13, 1988, in accordance with the remand order of the district court, the ALJ issued a recommended decision finding that Daniels' non-exertional impairments did not prevent him from performing substantial gainful activity. Thus, pursuant to the VE's testimony and the guiding framework of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P of Appendix II, Rules 202.13-.14, the ALJ recommended a finding of nondisability. On November 18, 1988, the Appeals Council fully adopted the findings and conclusions of the ALJ's recommended decision. This was, for purposes of this appeal, the final decision of the Secretary.
 
 
 9
 Daniels appealed the decision to the district court. The Secretary filed a motion for summary judgment in response. On May 5, 1989, United States Magistrate Morgan issued a Report and Recom endation proposing that the Secretary's decision denying Daniels' claim for disability benefits be affirmed. The Honorable Robert E. DeMascio issued an order and judgment on July 25, 1989, accepting the Magistrate's recommendation and granting the Secretary's motion for summary judgment. On September 6, 1989, Daniels filed a timely notice of appeal with this Court.
 
 B.
 
 10
 Daniels was born on July 25, 1937; he was 43 years of age when he filed the application for disability benefits. He has a high school education, and has attended community college. From 1964 to 1981, Daniels worked for an automobile manufacturer as a maintenance man and a welder. His job required him to stand for the entire work day, bend, reach, and lift 25-50 pounds, occasionally more. Daniels alleges that he became disabled on January 1, 1981. He alleges that he has not worked since 1978; however, later earning(s) statements indicate that he continued to work through 1986. Daniels alleges disability due to musculoskeletal difficulties resulting from lumbar back pain and tendonitis of the shoulders, hypertension, seizures, blackouts and headaches in addition to a stress related mental impairment. Despite Daniels' alleged mental impairment, he has continued to matriculate in college courses to qualify as a laboratory technician.
 
 II.
 
 11
 The issue before us is whether substantial evidence supports the Secretary's decision denying Daniels' claim for disability benefits because he retains the residual functional capacity to perform a significant number of light, unskilled jobs in the regional economy.
 
 A.
 
 12
 It is the duty of the Secretary: to weigh the evidence; to resolve material conflicts; to make independent findings of fact; and to determine the case accordingly. Richardson v. Perales, 402 U.S. 389 (1971). Our review of the Secretary's decision is limited to determining whether there is substantial evidence in the record, taken as a whole, to support the findings. Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983). We may determine also whether the correct legal standards were applied in reaching the decision. Garner v. Heckler, 745 F.2d 383 (6th Cir.1984). These are the parameters of our inquiry.
 
 B.
 
 13
 To qualify for entitlement to disability benefits under the Act, Daniels must meet a two-fold test. First, he must establish the existence of a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Second, he must show that the impairments render him unable to engage in any substantial gainful activity. 42 U.S.C. Sec. 423(d)(1)(A); Stille v. Weinberger, 499 F.2d 244 (6th Cir.1974). Daniels bears the burden of showing that he is disabled within the meaning of the Act. Id. at 246.
 
 
 14
 On appeal, Daniels contends that the Secretary's overall disability determination, thus his finding of residual functional capacity, was incorrect, and that the Secretary should have given more weight to the opinion letters of Drs. Gibson and Sarnsethsiri, upon which he, Daniels, relied to establish a clinical determination of disability. In support of his contention, Daniels argues that the Secretary incorrectly discredited the opinions of his two treating physicians, Drs. Gibson and Sarnsethsiri.
 
 
 15
 The Secretary responds that the whole record was considered, and that the Secretary made the correct determination that Daniels retains the residual functional capacity to perform light work. The Secretary further argues that he has fully supported the residual functional capacity determination on the basis of the objective record of Daniels' legitimate physical and mental impairments. We find the Secretary's argument persuasive.
 
 
 16
 A treating physician's opinion will be given great weight when it is supported by sufficient medical data. Garner v. Heckler, 745 F.2d 383, 391 (6th Cir.1984). The physicians' opinions are unsubstantiated by the objective record; they are, in fact, contradicted by other relevant medical opinions of record. Where the physician's physical capacity evaluation contains no substantiating medical opinions and is inconsistent with the physician's previous opinions,[4] the Secretary is not required to credit such opinions. Houston v. Secretary of HHS, 736 F.2d 365, 367 (6th Cir.1984): Villareal v. Secretary HHS, 818 F.2d 461, 463 (6th Cir.1987). The aforementioned two physicians' reports were the only medical evidence before the district court. The reports consisted only of two letters, one from each physician, stating that Daniels is disabled based on his herniated disc, hypertension, seizure disorder and diabetes. The record does not include reports of medical tests or examinations. (Defendant-Appellee's Appendix, p. 5). Therefore, the Secretary's credibility determination was proper.
 
 III.
 
 17
 The Secretary applied the correct legal standards to the determination of Daniels' claim. Since Daniels' residual functional capacity does not preclude him from engaging in light level, non-stressful work which will accommodate his non-exertional limitations, we find that the Secretary's finding of no disability, is supported by substantial evidence. For the foregoing reasons, we AFFIRM the judgment of the Honorable Robert E. DeMascio, United States District Judge for the Eastern District of Michigan.
 
 
 
 [1]
 Daniels filed prior applications for disability benefits on April 23, and September 7, 1989 (Administrative Record, p. 244, 250). He subsequently withdrew his April, 1979 application. The September, 1979 application was denied initially and on reconsideration. Id. at p. 255. On October 23, 1980, Administrative Law Judge ("ALJ") H. Jarvis Turner heard and denied Daniels' claim. The Appeals Council denied Daniels' request for review. Id. at p. 367-368. Foregoing further appeal, Daniels filed the February 26, 1981, application here in question
 
 
 [2]
 Daniels' attorney appeared at this hearing to establish that Daniels had discharged him, and that he would not be representing him at the proceeding. The reason for this was that hostility had developed between Daniels and counsel regarding the assertion of a psychiatric impairment. (Defendant-Appellee's Appendix, p. 7)
 
 
 [3]
 The VE testified based upon the following hypothetical:
 Now, assume a person of the claimant's age, education, and past work experience on all the questions I ask unless I specifically state otherwise. And assume that the claimant can do on a strict exertional basis a full range of light work. Now, to add to that, that he is unable to do ... "... repeated bending, prolonged sitting, working at heights, or working around moving machinery, or perform jobs involving highly complex and stressful situations." Now, based on that hypothetical are there jobs in existence that the claimant could perform in this area from say probably about 1981 on up to the present time, January of '81 [sic]?" (Defendant-Appellee's Appendix, p. 8)
 
 
 [4]
 Dr. Sarnsethsiri previously, in May, 1982, reported that Daniels had been unable to return to work since 1979. In April of 1985 Dr. Sarnsethsiri reported that Daniel's disability, although permanent, was amenable to treatment and would not preclude him from engaging in light work which was consistent with Daniels' restrictions. He did not specify the precise nature of these restrictions. In his July, 1985 letter, he stated Daniels was totally disabled. (Administrative Record, p. 672). The June 29, 1988, letter reported that he had been treating Daniels for the same conditions, and that Daniels had been disabled since February 2, 1979. Id. at p. 750