61 F.3d 903
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Wilma R. BRAZIER, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 94-5374.
 United States Court of Appeals, Sixth Circuit.
 July 13, 1995.
 
 Before: CONTIE, MILBURN, and SILER, Circuit Judges.
 MILBURN, Circuit Judge.
 
 
 1
 Claimant Wilma R. Brazier appeals the district court's grant of summary judgment affirming the Secretary's denial of her claim for disability insurance benefits under the Social Security Act, 42 U.S.C. Secs. 416(i), 423(d). On appeal, the issues are (1) whether the administrative law judge ("ALJ") erred in finding that the objective medical evidence of record did not support claimant's testimony about disabling pain, and (2) whether substantial evidence supports the ALJ's finding that claimant's testimony concerning her disabling pain was not fully credible. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 Claimant filed an application for disability insurance benefits on September 11, 1987, alleging that as of January 3, 1986, she became disabled due to high blood pressure, osteoarthritis, intestinal blockages, lung disease, and hardening of the arteries. Claimant's application for benefits was denied initially and on reconsideration. On February 1, 1988 plaintiff filed a request for an administrative hearing.
 
 
 3
 A hearing was held before an ALJ on April 25, 1988. On November 9, 1988, the ALJ issued a decision in which he found that claimant was not disabled. Thereafter, on December 12, 1988, claimant filed a request for review of the ALJ's decision with the Appeals Council. In an order dated September 7, 1989, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings.
 
 
 4
 A second hearing was held before the same ALJ on March 20, 1990. The ALJ issued a new decision on April 26, 1990, again finding that claimant was not disabled. On May 7, 1990, claimant filed a request for review of the ALJ's decision with the Appeals Council. On March 6, 1991, the Appeals Council again vacated the ALJ's decision and remanded the case for further proceedings.
 
 
 5
 A third hearing was held on October 16, 1991, before a different ALJ, who issued a decision on March 20, 1992, finding that claimant was not disabled and denying her claim for benefits. Claimant filed a request for review of the ALJ's decision with the Appeals Council; however, on October 22, 1992, the Appeal Counsel denied claimant's request for review and the ALJ's decision of March 20, 1992 became the final decision of the Secretary.
 
 
 6
 Claimant then filed a timely complaint in the district court under 42 U.S.C. Sec. 405(g) seeking judicial review of the Secretary's final decision. The matter was referred to a magistrate judge for further consideration. On November 4, 1993, the magistrate judge issued a report and recommendation, finding that the Secretary's denial of disability benefits to claimant was supported by substantial evidence and recommending that summary judgment be granted in favor of the Secretary. After de novo review of the magistrate judge's report and recommendation in light of claimant's timely objections, the district court adopted the magistrate judge's report and recommendation, denied claimant's motion for summary judgment, and granted the Secretary's motion for summary judgment. This timely appeal followed.
 
 B.
 
 7
 Claimant underwent a cardiac catheterization on November 3, 1982. Dr. A. Carlsen concluded that she had a normal left ventriculogram, with the exception of some left ventricular hypertrophy, and a normal coronary arteriogram.[1]
 
 
 8
 In September 1983, claimant was hospitalized. On discharge, her treating physician, Dr. Hudgins diagnosed hyperperistalsis and chest wall syndrome.
 
 
 9
 Dr. Richard Hoos, a neurologist, evaluated claimant in August 1985. Dr. Hoos noted that claimant had some vascular headaches, and he noted that except for a slight heart murmur, claimant's physical examination was otherwise normal. Dr. Hoos recommended that claimant undergo a carotid ultrasound test, which produced normal results.
 
 
 10
 On September 17, 1987, Dr. Hudgins completed an assessment of plaintiff's range of motion. He concluded that the range of motion in claimant's cervical spine, lumbar spine, shoulders, elbows, hips, knees, ankles, and wrists were within normal limits. R. 265-66. Dr. Hudgins also completed a chest pain questionnaire on September 17, 1987. He stated that claimant complained of pain in her chest wall, neck, and shoulders. Dr. Hudgins stated that claimant's pain was intermittent, with no specific triggering action, no associated symptoms, and no need for nitroglycerin. Dr. Hudgins also stated that claimant's pain did not impair her physical capacity in any way. R. 272.
 
 
 11
 On April 18, 1988, Dr. Hudgins completed a form assessing claimant's work-related capabilities. He concluded that claimant could lift 35 pounds, walk for two hours total or one-half hour without interruption in an eight-hour day, and sit for eight hours in an eight hour day. He also stated that claimant could occasionally balance, stoop, crouch, and kneel, but that she could never climb or crawl. He stated that claimant's ability to reach, push, and pull were affected by her chronic bronchitis, osteoarthritis, and chest wall syndrome, but her ability to handle and feel were not affected. Dr. Hudgins also stated that claimant was subject to certain environmental restrictions; namely, she should not be exposed to moving machinery, temperature extremes, chemicals, dust, fumes, and vibration. R. 288-90.
 
 
 12
 On April 19, 1988, claimant underwent a pulmonary function study, a spirometry test. The reviewing physician, Dr. H. Khatri noted that claimant showed a marked decrease in several categories of pulmonary functioning; however, he noted that probably this is "related to poor effort on [claimant's] part." R. 356. Dr. Khatri also suggested that claimant had obstructive pulmonary disease responsive to inhaled bronchodilators, because her condition improved with the use of bronchodilators.
 
 
 13
 Dr. Hudgins completed a second assessment of claimant's work-related abilities on November 9, 1989. He stated that claimant could occasionally lift 10 pounds and frequently lift 5 pounds, could walk for two hours total or one-half hour without interruption in an eight-hour day, and sit for six hours total or one hour without interruption in an eight-hour day. He stated that claimant could stoop and kneel occasionally, but she could never climb, crawl, crouch, or balance. Further, he stated that claimant's ability to reach, handle, push, and pull were affected by her arthritis. Dr. Hudgins also noted that claimant was subject to certain environmental restrictions; namely, she should avoid exposure to temperature extremes, chemicals, dust, fumes, and vibrations. R. 354-55.
 
 
 14
 Claimant was examined by Dr. R. Davidson, a consulting physician, on May 2, 1991. Dr. Davidson's physical examination revealed that claimant had a full range of motion in her shoulders, some tenderness in her biceps, had a full range of motion in her wrists, hands, and fingers. She also had a full range of motion in her hips, knees, and ankles, although she complained of some tenderness in these areas. Dr. Davidson's final diagnosis was fibromyalgia. He also stated that he could find no evidence of osteoarthritis. Dr. Davidson also suggested that in light of her condition, claimant would have trouble lifting and carrying more than 25 pounds occasionally and more than ten pounds frequently. She would also have difficulty sitting for more than four hours a day or performing "a very active job" where she had to climb, balance, stoop, crouch, kneel, or crawl. R. 397-99.
 
 
 15
 On October 4, 1991, Dr. Hudgins completed a third assessment of claimant's work-related abilities. He reported that claimant could occasionally lift ten pounds. She could walk for two hours total or one-half hour without interruption in an eight-hour day, and sit for six hours total or two hours without interruption in an eight-hour day. Dr. Hudgins stated that claimant could also occasionally balance, but she could never climb, stoop, kneel, crouch, or crawl. Claimant's ability to reach, handle, push, pull, and feel were affected by her muscle and joint pain secondary to fibromyalgia, and her capacity for physical exertion was limited by chronic obstructive pulmonary disease. Dr. Hudgins also noted that claimant was subject to certain environmental restrictions; she should avoid heights, moving machinery, temperature extremes, chemicals, dust, fumes, humidity, and vibration. R. 411-12.
 
 
 16
 In addition, the record also contains voluminous treatment notes from Dr. Hudgins, claimant's treating physician, which cover the period from January 1986 through March 1991. In a letter dated October 28, 1991, Dr. Hudgins stated that claimant had been under his care for a number of years, and his primary diagnoses of her condition were hypertension, chronic peptic ulcer disease, fibromyalgia, and chronic lung disease. Dr. Hudgins also stated that claimant's exercise tolerance had continued to decrease and he expected her physical condition to become progressively worse.
 
 
 17
 Claimant testified at the three administrative hearings which were held on April 25, 1988; March 20, 1990; and October 16, 1991. Claimant was born on September 27, 1941, and was 50 years of age at the time of the third administrative hearing. She completed her formal education through the ninth grade. Subsequently, she earned her GED and a realtor's license. Claimant worked in the "deli's" of various convenience stores from 1978 through January 1986. These jobs required claimant to slice meats, cook chickens, wrap items, use a cash register, fill drink coolers, help mop and clean up, fill out daily reports, and make bank deposits. On occasion, claimant also supervised four other employees who worked in the convenience store. Claimant testified that she was released from her last job due to health-related absences. She received unemployment compensation after being laid off from her job.
 
 
 18
 Claimant testified that she underwent surgery on two occasions for intestinal and stomach blockages that prevented proper gastric emptying. Claimant's surgeries were in 1979 and 1984. She testified that she has diarrhea or constipation virtually all of the time and very rarely has normal bowel movements.
 
 
 19
 Claimant also testified that she had asthma and bronchitis that required the use of a breathing machine. At the time of the first administrative hearing claimant smoked a pack of cigarettes per day; however, she subsequently quit smoking on the advise of her physician, Dr. Hudgins. Claimant also stated that she had chest wall syndrome that caused chest pain and fluid build-up in her lungs. Claimant testified that this would occur once or twice a year.
 
 
 20
 Plaintiff testified that she suffers from angina which requires medication. She also takes medication for hypertension. She testified that she has constant pain in her legs, every joint in her body, shoulders, elbows, wrists, fingers, knees, hips, and back. She stated that she had never seen a rheumatologist. She also stated that she takes only Bufferin for the pain because she cannot take anti-inflammatories due to gastrointestinal upset. Claimant also testified that sitting in hot water, taking Bufferin, wearing wrist bands, and wearing surgical stockings gave her some relief from musculoskeletal pain.
 
 
 21
 Claimant testified that she had difficulty lifting objects, especially in the morning. She stated that she had difficulty using her hands, in particular, she felt that she would not be able to use a cash register, and standing on her feet. Claimant testified that she had difficulty lifting small objects, such as a straight pin or pencil, because she had difficulty grasping them. When questioned by the ALJ, claimant testified that she could sit for only 10-15 minutes, could stand for only 10 minutes, and could not walk more than one-quarter of a city block.
 
 
 22
 Claimant's daily activities include cooking (although her husband lifted the pots and pans up to the stove), reading, visiting relatives, doing laundry, dusting, washing dishes, and driving a car when necessary. R. 78, 109-110. Claimant does the driving because her husband is legally blind and cannot drive. Claimant testified that she drove to her attorney's office on the day of the second administrative hearing and that she drove approximately 34 miles every other week to see her mother. R. 70, 84.
 
 
 23
 A vocational expert ("VE"), Patsy Bramlett, testified at the hearing. The VE described claimant's past employment at the convenience stores as semi-skilled work at the medium level of exertion. The VE stated that claimant would have acquired some transferrable skills from her past work including record-keeping, dealing with customers, supervisory skills, and organizational skills.
 
 
 24
 When the ALJ asked what level of work the claimant could perform if she could lift ten pounds occasionally and five pounds frequently, stand or walk up to two hours, and sit for six hours in an eight-hour day, the VE responded that such a person could perform sedentary work. When the ALJ added additional restrictions such as never climbing, balancing, crouching, or crawling, occasionally stooping and kneeling, as well as certain restrictions on reaching, handling, pushing, and pulling, and certain environmental restrictions, such as avoiding temperature extremes, chemicals, dust, fumes, and vibration, the VE stated that the range of sedentary jobs that such a person could perform would be reduced by only seven percent. The VE indicated that a person with such restrictions could perform 11,000 unskilled sedentary jobs and 6,200 semi-skilled cashier jobs, which are available in the national economy.
 
 II.
 A.
 
 25
 Claimant argues that in his decision of March 20, 1992, the ALJ erred by evaluating her complaints of subjective pain under an incorrect legal standard. Claimant also argues that the ALJ failed to comprehend "the nature of [her] primary impairment, fibromyalgia." Brief of Appellant at 11.
 
 
 26
 Pursuant to 42 U.S.C. Sec. 405(g), this court has jurisdiction to review the Secretary's decisions. Our review of the Secretary's decision is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards in reaching her conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Kirk v. Secretary of Health and Human Servs., 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). On review, we do not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).
 
 
 27
 In determining whether the Secretary's factual findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. Born v. Secretary of Health and Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If supported by substantial evidence, the Secretary's decision must be affirmed even if a reviewing court would decide the matter differently, Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam), and even if substantial evidence also supports the opposite conclusion, Mullen v. Bowen 800 F.2d 535, 545 (6th Cir. 1986) (en banc). However, this deferential standard of review applies only to resolve issues of fact and credibility. Listenbee v. Secretary of Health and Human Servs., 846 F.2d 345, 349 (6th Cir. 1988) (per curiam). Furthermore, we will not base our decision on a single piece of evidence in the record and disregard other relevant evidence in making a substantial evidence review. Mowery v. Heckler, 771 F.2d 966, 970 (6th Cir. 1985).
 
 
 28
 A social security disability claimant bears the ultimate burden of proof on the issue of disability. Richardson v. Heckler, 750 F.2d 506, 509 (6th Cir. 1984). However, once a claimant makes out a prima facie case that he cannot perform his usual work due to his disability, the burden of proof then shifts to the Secretary to show that there is work in the national economy which the claimant can perform. Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). The Secretary must prove that having considered the claimant's present job qualifications, such as age, experience, education, and physical capacity, and the existence of jobs to match those qualifications, the claimant retains the capacity to perform a different kind of job. Young v. Secretary of Health and Human Servs., 925 F.2d 146, 148 (6th Cir. 1990); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). The testimony of a vocational expert may be used to satisfy the Secretary's burden of proof regarding the availability of jobs which a claimant could perform. Young, 925 F.2d at 148-49. The vocational expert's testimony must be based on a hypothetical question that accurately portrays the claimant's physical and mental impairments. Varley v. Secretary of Health and Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).
 
 
 29
 We have "previously held that subjective complaints of pain may support a claim of disability." Duncan v. Secretary of Health and Human Servs, 801 F.2d 847, 852 (6th Cir. 1986) (citing Glass v. Secretary of Health, Education & Welfare, 517 F.2d 224, 225 (6th Cir. 1975) (per curiam)). In Gaffney v. Bowen, 825 F.2d 98 (6th Cir. 1987) (per curiam) we described "the two-pronged test for reviewing claims of disabling pain" as follows:
 
 
 30
 First we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.
 
 
 31
 Gaffney, 825 F.2d at 101 (quoting Duncan, 801 F.2d at 853).
 
 
 32
 In his decision of March 20, 1992, the ALJ found "that the claimant has severe fibromyalgia[2] ...." R. 25. The ALJ also found that
 
 
 33
 [t]he objective medical evidence does not establish the existence of any medically determinable impairment of a level of severity which would support the alleged degree and chronicity of the claimant's complaints particularly in light of her testimony that she is almost totally incapacitated primarily due to pain. Her medical treatment has been carefully considered. She has been provided medication therapy for her respiratory, hypertensive and gastrointestinal conditions as well as medication for her symptoms of pain. However, she testified at the hearing that she takes only Bufferin, as needed to relieve her pain symptoms (since prescribed pain medication apparently aggravates her gastrointestinal condition) ... Moreover, a recent consultative medical evaluation revealed no evidence of joint effusion, swelling or deformity. Range of motion was full in all joints of the upper and lower extremities and X-rays of the claimant's pelvis, shoulders, knees and ankles revealed no abnormalities.... [Claimant] testified that her treating physician, Dr. Hudgins, had stated that she could do no walking. However, that statement is contrary to the medical assessments by Dr. Hudgins, completed in November 1989, ... and October 1991 ... Likewise, it is inconsistent with her account of her daily activities. She performs household chores including dusting, washing dishes, and washing clothes ... She enjoys, reading, watching television and "sitting in the swing." [Claimant's] husband is blind and is unable to drive. Therefore, she continues to drive her automobile as necessary. In a disability report, completed by her on September 2, 1987, she related that she visited with her mother and her children on a weekly basis and with her brothers and sisters bi-monthly. Occasionally, she visited friends and she also visited a neighbor about three hours weekly.
 
 
 34
 * * *
 
 
 35
 No treating or examining physician has assessed that [claimant] is disabled.
 
 
 36
 * * *
 
 
 37
 Thus, after careful review and consideration of all the evidence, including observations and testimony adduced at the latest supplemental hearing which reveals several inconsistencies and contradictions in the evidence, and the allegations of the claimant relative to her impairments and alleged functional limitations, her testimony cannot be considered entirely credible.
 
 
 38
 J.A. 21-23.
 
 
 39
 In Preston v. Secretary of Health and Human Servs., 854 F.2d 815 (6th Cir. 1988) (per curiam), we stated that
 
 
 40
 fibrositis causes severe musculoskeletal pain which is accompanied by stiffness and fatigue due to sleep disturbances. In stark contrast to the unremitting pain of which fibrositis patients complain, physical examinations will usually yield normal results--a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. There are no objective tests which can conclusively confirm the disease; rather it is a process of diagnosis by exclusion and testing of certain "focal tender points" on the body for acute tenderness which is characteristic in fibrositis patients. The medical literature also indicates that fibrositis patients may also have psychological disorders. The disease commonly strikes between the ages of 35 and 60 and affects women nine times more than men.
 
 
 41
 Id. at 817-18. Furthermore, in her brief, "the Secretary concedes that objective medical tests such as CAT scans and x-rays 'are not highly relevant in diagnosing fibrositis or its severity."' Brief of Appellee at 28. See Lisa, 940 F.2d at 44 ("The Secretary concedes that 'fibrositis, or fibromyalgia, is not easily detected by standard clinical tests."'). See also Preston, 854 F.2d at 819 ("[T]his issue is complicated by the very nature of fibrositis. Unlike most diseases that can be confirmed or diagnosed by objective medical tests, fibrositis can only be diagnosed by elimination of other medical conditions which may manifest fibrositis-like symptoms of musculoskeletal pain, stiffness, and fatigue.").
 
 
 42
 However, in Preston, we noted that the claimant's treating physician:
 
 
 43
 ha[d] done all that can be medically done to diagnose [her] fibrositis and to support his opinion of disability. He referred [claimant] to a neurologist, orthopaedist, rheumatologist, and a psychologist for evaluation. He also referred [claimant] to physical therapy and a pain clinic for treatment. He observed that [claimant's] complaints of pain, stiffness and fatigue were classic symptoms of fibrositis. Moreover, even before [claimant's treating physician] was able to pinpoint fibrositis as the proper diagnosis, he was injecting cortisone or novocaine for relief into the parts of the body that he later learned were "focal tender points" characteristic of fibrositis patients. Given the circumstances of this case and the nature of this disease, [the] systematic elimination of other diagnoses, identification of focal tender points, and observation of other classic symptoms of fibrositis satisfied the standard set forth in Duncan.
 
 
 44
 Preston, 854 F.2d at 820.
 
 
 45
 The ALJ considered the factors set forth in Preston at the October 16, 1991 administrative hearing and in his decision. Claimant testified that her physician Dr. Hudgins told her that she had fibromyalgia. R. 105. However, the ALJ asked claimant whether Dr. Hudgins had referred her to any other physicians, particularly a rheumatologist, to confirm the diagnosis of fibromyalgia. Claimant answered that Dr. Hudgins had not referred her to any other physicians and that she had never been to a rheumatologist. R. 105-06. Further, in his decision the ALJ noted that the evidence showed that the only pain medication taken by claimant was Bufferin. See Blacha v. Secretary of Health and Human Servs., 927 F.2d 228, 231 (6th Cir. 1990) (use of only mild medications, such as aspirin, undercuts complaints of disabling pain). Further, there is no medical evidence of record showing that claimant had ever been referred to a pain clinic or physical therapy program. Moreover, there is no medical evidence that claimant ever received injections of cortisone or novocaine into "focal tender points" for pain relief. Finally, there is no indication that Dr. Hudgins ever took steps to systematically eliminate other diagnoses, identify painful trigger points, or identify other pain-producing symptoms of fibromyalgia.
 
 
 46
 Thus, the ALJ properly concluded that the objective medical evidence of record did not support claimant's assertions as to the "degree and chronicity" of her complaints of disabling pain. Furthermore, although, as conceded by the Secretary, "[t]here are no objective [medical] tests which can conclusively confirm the" existence of fibrositis, see Preston, 854 F.2d at 818, the ALJ could properly find that the actions taken by Dr. Davidson and, in particular, claimant's treating physician, Dr. Hudgins, fell far short of the action taken by the treating physician of the claimant in Preston who systematically eliminated diagnoses other than fibrositis, id. at 820. Accordingly, the ALJ properly found that in this action the Duncan standard had not been satisfied.
 
 B.
 
 47
 Claimant argues that the ALJ's finding that her testimony concerning her disabling pain was not fully credible is not supported by substantial evidence. However, while the record shows that claimant suffers from fibrositis, or fibromyalgia as it is also known, the ALJ's finding that her complaints of disabling pain are not fully credible is supported by substantial evidence. As the ALJ correctly stated, "[n]o treating or examining physician has assessed that [claimant] is disabled," either as the result of fibromyalgia, or any of the other impairments from which she suffers, or any combination of her impairments. R. 23. Further, the only two physicians of record who opined that claimant was suffering from fibromyalgia submitted assessments of claimant's residual functional capacity that were consistent with her being capable of performing sedentary work.
 
 
 48
 Moreover, the ALJ also properly considered claimant's daily activities in concluding that she was not disabled due to pain. Claimant's testimony indicated that she continued to perform a number of daily activities that were not fully consistent with her allegations that she was totally disabled by pain, and, thus, was substantial evidence supporting the ALJ's determination concerning her complaints of disabling pain. Sizemore v. Secretary of Health and Human Servs., 865 F.2d 709, 713 (6th Cir. 1988) (per curiam).
 
 
 49
 Furthermore, "'[t]olerance of pain is a highly individual matter and a determination of disability based on pain by necessity depends largely on the credibility of the claimant."' Villarreal v. Secretary of Health and Human Servs., 818 F.2d 461, 463 (6th Cir. 1987) (per curiam) (quoting Houston v. Secretary of Health and Human Servs., 736 F.2d 365, 367 (6th Cir. 1984). "[I]t must be kept in mind that the determination of credibility related to subjective complaints of pain rest with the ALJ and that 'the ALJ's opportunity to observe the demeanor of the claimant ... is invaluable and should not be discarded lightly."' Gaffney, 825 F.2d at 101 (quoting Kirk, 667 at 538). Furthermore, in this case, the ALJ did more than simply reject claimant's complaints of totally disabling pain in a conclusory fashion on the basis of credibility; rather, the ALJ discounted claimant's subjective complaints of pain based upon inconsistencies between her testimony and the evidence of record. See Smith v. Schweiker, 728 F.2d 1158, 1162 (8th Cir. 1984). Cf. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994). In Felisky, the ALJ raised five different reasons to discount the claimant's credibility. Id. at 1036. On appeal, we found that none of the factors advanced by the ALJ supported the ALJ's decision to discount the claimant's credibility. Id. at 1040. However, in the case before us the inconsistencies in claimant's testimony do support the ALJ's decision to discount her credibility. Accordingly, we conclude that the ALJ's credibility determination was supported by substantial evidence and should not be discarded by this court.
 
 
 50
 Finally, claimant argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to consider her alleged limitations to the use of her arms and hands, namely, that her ability to reach, handle, push, pull, and feel were limited, and limitations to her bimanual dexterity in determining that she could perform a significant number of jobs in the national economy. First, there is absolutely no medical evidence of record suggesting that claimant is limited in or lacks bimanual dexterity. Second, a thorough review of the questions posed to the VE shows that the ALJ considered the limitations to the use of claimant's arms and hands. Thus, the ALJ's decision is supported by substantial evidence.
 
 III.
 
 51
 For the reasons stated, the district court's judgment is AFFIRMED.
 
 
 
 [1]
 In this case, the record contains numerous medical reports concerning claimant's various medical conditions. This evidence is aptly summarized in the three ALJ decisions and the magistrate judge's report and recommendation. Furthermore, claimant's arguments on appeal concern her complaints of subjective pain arising out of her fibrositis or fibromyalgia. Consequently, we have briefly summarized the other medical evidence of record and have focused on the medical evidence concerning claimant's fibrositis and her testimony relevant to her subjective complaints of pain
 
 
 [2]
 Fibromyalgia is pain in the fibrous tissues, muscles, tendons, ligaments, and other white connective tissues, frequently affecting the low back, neck, shoulders, and thighs. See The Merck Manual (16th ed. 1992), pp. 1369-70. The term fibromyalgia is often interchangeably used with the terms fibromyositis or fibrositis. See Lisa v. Secretary of Health and Human Servs., 940 F.2d 40, 43 (2d Cir. 1991)